DAILY *v.* DOE, etc., and CANAL-BOAT A. NOXON, etc.

*(District Court, S. D. New York.* ———, 1880.)

1. JURISDICTION—SUIT FOR POSSESSION OF SHIPS.—There is nothing in the laws of the United States impairing the concurrent jurisdiction of the state courts over suits for the possession of ships, where the title of the defendant was derived under a marshal's deed.

2. SAME—JUSTICE OF THE PEACE—AFFIDAVIT OF VALUE.—A New York statute provides that justices of the peace shall have civil jurisdiction in certain cases, including "an action to recover the possession of personal property claimed, the value of which, as stated in the affidavit of the plaintiff, his agent, or attorney, shall not exceed the sum of $200." It is further provided in the same statute that, before any process shall issue, the plaintiff, his agent, or attorney shall make proof, by affidavit, showing among other things the "actual value" of the property claimed. *Held*, that such affidavit is an essential prerequisite to the attaching of the jurisdiction of the court.

   *Denis* v. *Crittenden*, 42 N. Y. 542.

3. SAME—SAME—SAME—PROOF.—The mere fact that the justice went on and took jurisdiction, and the defendant appeared and pleaded and raised no objection, joined to the want of affirmative proof that there was no affidavit, will create no presumption in support of a judgment, nor be sufficient to prove that the necessary affidavit was made.

4. SALE IN ADMIRALTY—TITLE OF PURCHASER.—A purchaser in good faith under a marshal's sale, upon a decree of a court of admiralty, will be protected in his title if the court had jurisdiction to decree the sale.

5. SAME—JURISDICTION—NOTICE.—In such case jurisdiction over the vessel is acquired by its seizure by the marshal under the process of the court, and this seizure and possession by the marshal are, in view of the law, notice to all persons interested of the pendency of the proceedings, and of their right to intervene and protect their interests.

6. SAME—SAME—NOTICE BY PUBLICATION.—The rules and practice of the court require notice by publication, but they have not the force of statutory requirements, nor do they prescribe such publication as an absolutely essential prerequisite, either to the assumption of jurisdiction, or to the exercise of the power of the court to condemn and sell a vessel to satisfy a maritime lien.

7. SAME—SAME—SAME.—The want of notice by publication will furnish ground for opening the decree, but does not render the proceedings void.

8. SAME—MATTERS OF ACCOUNT.—A court of admiralty will take no jurisdiction of matters of account, in a suit for possession, between strangers to the suit, and the respondent who has been in possession.

*W. R. Beebe,* for libellant.

*J. A. Hallen* and *W. Mynderse,* for respondent Dutcher.

*T. Saunders,* for owners of cargo.

CHOATE, D. J. This is a suit to recover possession of the canal-boat A. Noxon. The libel alleges that the libellant is, and ever since July, 1876, has been, the sole owner of the canal-boat; that in July, 1876, he became the owner of the boat by a purchase from the executors of one William Murtagh, the same having been sold under a writ of *venditioni exponas* issued out of this court, and bought in by the said Murtagh August 28, 1874; that the respondent, John Doe, whose real name is unknown, is in the unlawful possession of the boat, and unlawfully refuses to allow the libellant to take possession of her, and has kept the libellant from the lawful possession of the same since about the year 1879. The libel alleges a demand and refusal to deliver possession of the boat.

One Susan Dutcher appears as respondent. Her answer denies that the libellant is the owner of the boat. It admits that the boat was sold under a writ of *venditioni exponas* issued out of this court, but alleges that the writ was fraudulently obtained, by collusion between one Walker and said Murtagh and one Williams, the master of the boat; that Walker pretended to act as the authorized proctor of the owner of the boat, though he was not authorized to act as such by the owner, and acted as such without the knowledge or consent of the owner; that Murtagh obtained no title to the boat, and that she was never sold under any valid judgment or decree; that the respondent is the lawful owner, and entitled to the possession of the boat. The answer also denies the alleged demand and refusal, and denies the jurisdiction of the court. It then alleges that in 1867 one Wennie, the builder of the boat, sold and delivered her to one Philip Dutcher; that in April, 1873, Philip Dutcher entered into an agreement with James M. Williams, by which Dutcher agreed to transfer the boat to Williams in consideration of $2,000, and Dutcher agreed to give Williams a bill of sale, when the payments agreed upon had been actually made, in the meantime the

title of the boat remaining in Dutcher; that Williams navigated the boat, and finally secreted the same so that she could not be found by Dutcher, but Williams failed to make the payments; that Dutcher searched for the boat, but she was secreted by Williams, Murtagh, and the libellant, who also altered her appearance for the purpose of concealment; that Dutcher was not able to find her till about August 28, 1879, when he found her at Port Schuyler, in the county of Albany, state of New York; that he at once commenced an action of replevin, for the possession of the boat, in a court of competent jurisdiction; that the libellant herein duly appeared in said action, and, after trial, judgment was rendered, September 8, 1879, in favor of Dutcher and against this libellant, for the possession of the boat and for costs, and that possession was given, by the officer of the court, to Dutcher, under said judgment, the court being a justice's court, in the county of Albany; that the court had jurisdiction of the cause and of the parties, and that 20 days have elapsed since the judgment without any appeal; that on the eighth day of November, 1879, Philip Dutcher sold and delivered the boat to one Hallen, and on the tenth day of said November Hallen sold and delivered the boat to the respondent, Susan Dutcher.

The first question that arises in this case is as to the validity and effect of the judgment of the justice's court, set up in the answer, as an adjudication upon the title or right to the possession of this boat, binding upon the libellant; for if it be true that, by the judgment of a court having competent jurisdiction of the subject-matter and of the parties, in a suit between Philip Dutcher, the vendor of the respondent, as plaintiff, and this libellant as defendant, it has been determined that the respondent's vendor was entitled to the possession, this libel, of course, must be dismissed.

It is, indeed, suggested that a party holding under a marshal's sale is not liable to be dispossessed by an action of replevin brought in a state court, and that the justice's court cannot disregard the decree of this court, and the possession held under it. It appears that in the action in the justice's court the title of libellant, as set forth in his libel, was shown,

and the record of this court in the suit in which the boat was sold was put in evidence, and, nevertheless, the jury found for the plaintiff for possession, and the justice rendered judgment as alleged in the answer. But obviously there is nothing in the suggestion that a purchaser under a marshal's sale, or one who succeeded to his title, is not, equally with any other person having or claiming to have a title to a vessel, liable to be sued, in an action of replevin to recover the same, in any state court which, under the laws of the state, has jurisdiction over the parties, and also jurisdiction over the subject-matter; that is, of an action of replevin.

Possession under a marshal's deed gives the grantee no exemption from being sued. If sued he must show his title by way of defence. The commencing of a suit against him by due process of law is not an interference with the authority of the marshal, or with the court by whose authority he sells. There is nothing in the laws of the United States impairing the concurrent jurisdiction of the state courts over suits for the possession of ships because the title of the defendant sued is thus derived. *The Royal Saxon*, 1 Wall. 333. Nor is there any difference between a court of general and a court of limited jurisdiction in the effect of the judgment as a conclusive determination of the rights of the parties, provided the court had jurisdiction to hear and determine the case, and jurisdiction of the parties. A judgment of an inferior court is just as binding in such a case as that of a court of general jurisdiction, subject, of course, to that right of appeal or review which the laws of the state may give to the defeated party.

It seems also to be the law of the state of New York that the judgment rendered by a justice's court is valid, though not entered in his docket, and omissions in his docket may be supplied by parol evidence. In this case, although the entry of judgment is simply "Costs, 8.75," it has been satisfactorily shown that the justice declared his judgment in favor of the plaintiff, after trial and verdict, and in conformity to the verdict. *Hall* v. *Tuttle*, 6 Hill, 38.

The question, then, is whether it is shown by the respond-

ent that the justice had jurisdiction of the parties and the subject-matter. That he had jurisdiction of the parties if he had jurisdiction of the subject-matter—that is, if the case was one that he was competent to try—is clear enough, since they appeared, put in a complaint and answer, and went to trial without any objection on the part of the defendant, this libellant. He thereby waived any defect in the process, so far as jurisdiction of his person is concerned. The question whether the justice had jurisdiction of the subject-matter depends on the construction of the statute under which he acted. That statute provides that justices of the peace shall have civil jurisdiction in certain cases, including "an action to recover the possession of personal property claimed, the value of which, as stated in the affidavit of the plaintiff, his agent, or attorney, shall not exceed the sum of $200." It is provided in the same statute that, before any process shall issue, the plaintiff, his agent, or attorney shall make proof, by affidavit, showing among other things the "actual value" of the property claimed. This is, unquestionably, the affidavit first referred to as "the affidavit of the plaintiff, his agent, or attorney." The question is whether this proof by the affidavit, that the value does not exceed $200, is an essential prerequisite to the attaching of the jurisdiction of the court. In the absence of authoritative decisions of the state courts it might be considered doubtful whether the substance of the requirement as to jurisdiction might not be that the value of the property in fact does not exceed $200, and whether, where the defendant appears and submits to the jurisdiction, the failure to make the affidavit might not be considered as cured by his waiving it. But the court of appeals have, I think, passed on this question, and given a construction to the statute, holding that its meaning is not that the justice has jurisdiction when the value of the property does not in fact exceed $200, but only in case the plaintiff, his agent, or attorney has, by his affidavit, made proof of that fact. I think this is the real meaning and effect of the decision in *Dennis* v. *Crittenden,* 42 N. Y. 542, and this court is bound to follow that decision. The affidavit being essential to conferring jurisdiction on the jus-

tice, the failure to make the affidavit cannot be waived by the defendant's appearing and not taking the objection. Consent cannot give jurisdiction over the subject-matter. As the rule is very briefly but very exactly expressed, in *Coffin, Executor,* v. *Tracey,* 3 Caines, 129, "Consent will take away error, but neither that nor confession will give jurisdiction." See, also, *Bellinger* v. *Ford,* 14 Barb. 250; *Hoyt* v. *Molony,* 2 N. H. 322; *Dudley* v. *Mayhew,* 3 N. Y. 9.

It is insisted, however, that as it does not affirmatively appear by the proofs that there was no affidavit, and it does appear that the justice went on and took jurisdiction, and the defendant appeared and pleaded, and raised no objection, it will be presumed in support of the judgment that the necessary affidavit was made, or that these facts are sufficient proof that it was made. It is true that, in case of a judgment of a court of general jurisdiction, everything not inconsistent with the record is presumed to have been regularly done that is necessary to sustain the judgment; but the contrary rule applies when a right is set up under the judgment of a court of special or limited jurisdiction. The New York Code, § 532, provides as follows: "In pleading a judgment, or other determination, of a court or officer of special jurisdiction, it is not necessary to state the facts conferring jurisdiction, but the judgment or determination may be stated to have been duly given or made. If that allegation is controverted the party pleading must, on the trial, establish the facts conferring jurisdiction." That a justice of the peace is a court or officer of special jurisdiction, within the meaning of the rule of pleading thus changed, and the rule of evidence thus embodied in the statute law of New York, has been often held by the courts. *Turner* v. *Roby,* 3 N. Y. 193; *Yager* v. *Hannah,* 6 Hill, 631; *Hunt* v. *Dutcher,* 13 How. Pr. 538, 539; *Barnes* v. *Harris,* 3 Barb. 603. See, also, *Mills* v. *Martin,* 19 Johns. 7.

It cannot, therefore, be presumed that there was an affidavit. The burden of proving the fact was assumed by respondent in setting up the judgment in her answer. The appearance of this libellant in the case is not sufficient evidence of

the fact, if, indeed, it is any evidence. His voluntary appearance would be a waiver of the affidavit if the want of it was a mere irregularity. His appearing and submitting the case are not inconsistent with the absence of an affidavit; therefore they do not amount to an admission on his part that there was an affidavit. The justice, and the attorney for the plaintiff in the suit before the justice, were both examined as witnesses on the trial of this suit, and whatever weight the fact that this libellant appeared and made no objection might be entitled to, if any, as evidence of the making of the affidavit, is overborne by the circumstance that these witnesses were examined, and, having the means of testifying to this essential fact, if it existed, gave no testimony upon it. The docket of the justice was also produced, and does not show any affidavit. The judgment of the justice must therefore be held to be a nullity, because it is not shown that he had jurisdiction of the cause.

The next question to be determined is whether the libellant's title under the marshal's sale is a good title as against Philip Dutcher, assuming that he was the owner of the boat at the time of the decree of this court under which that sale was made. The objections taken to this title are that Philip Dutcher is not bound by the decree, nor his interest cut off by the sale, because, as the respondent contends, he did not appear in the suit, nor have actual or constructive notice of the same. On the eighteenth of July, 1874, a libel was filed by William Murtagh against the canal-boat Noxon, in this court, for a towage service, for the sum of $42. On the same day process was issued, and the marshal seized the canal-boat A. Noxon under the monition, and made return on July 21, 1874, that he had, in obedience to the monition, attached the canal-boat Noxon, her tackle, etc.

On the twenty-third of July, 1874, a libel was filed by the New York & Amboy Towing Company against the canal-boat A. Noxon, for towage service amounting to $271.45, and process was issued returnable August 11, 1874, on which the marshal returned August 11, 1874, that he had attached the canal-boat Noxon.

On the twenty-fifth of July, 1874, Luke Prickard and others filed a libel, for repairs, for the sum of $38, against the canal-boat A. Noxon, and process issued returnable July 28, 1874, on which the marshal returned that he had attached the canal-boat A. Noxon.

On the twenty-eighth day of July, 1874, Horatio N. Walker, a proctor of this court, filed with the clerk, in each of the two cases of Murtagh against canal-boat Noxon, and Prickard and others against canal-boat A. Noxon, a notice entitled in the cause as follows: "The clerk will please enter my appearance as proctor for the claimant;" which notice was subscribed "Horatio N. Walker, Proctor for Claimant."

On the fourth day of August, 1874, Hewitt Chard and others filed their libel against the canal-boat A. Noxon, for repairs and materials, for the sum of $231.35, and process was issued returnable August 25, 1874, on which the marshal returned that he had attached the canal-boat A. Noxon.

On the return day of the several monitions in the cases of Prickard on the twenty-eighth of July, and of the New York & Amboy Towing Company on the eleventh of August, and also on the return day of the order of publication in the case of Murtagh, Mr. Walker also appeared in court; his appearance as proctor for claimant was minuted by the clerk, and he obtained leave to answer in one week.

On the eleventh of August, 1874, Mr. Walker signed a paper entitled "In the suit of Murtagh against the canal-boat Noxon," as follows: "The undersigned, proctor for the owner and claimant, hereby consents that a decree may be entered for $42 and costs, and that said vessel may be sold by an order of this court, and a *vend. ex.* may be issued to the marshal." This was subscribed "Horatio N. Walker, Proctor for Dutcher, etc., Owners." This was filed August 13, 1874, and a decree of condemnation and sale was entered, together with an order for the issue of a writ of *venditioni exponas* for the sale of the canal-boat, upon giving "six days' notice of sale pursuant to law." The decree recites that it is made "on reading and filing a consent signed by Horatio N. Walker, proctor for the claimant," and was entered on motion of libel-

lant's proctors. The writ of *venditioni exponas* was issued on the thirteenth of August, 1874, and on the twenty-ninth day of August, 1874, the marshal made return that he had sold the canal-boat Noxon for $600, which he had paid to the clerk of the court.

On the thirty-first of August, 1874, a consent was filed, entitled in the four suits, and subscribed "Horatio N. Walker, Proctor for Claimant," that the proceeds arising from the sale be paid over to the proctors for the libellants, without the entering of any decrees in said actions. This consent was dated August 29, 1874. The money was so paid out.

The foregoing is a full statement of all that appears upon the records or files of this court in said suits. No claim was ever filed on behalf of any person as owner of said canal-boat. William Murtagh, the libellant in the first suit, became the purchaser at the marshal's sale, and the libellant in this suit purchased the boat, in good faith and for value, of his executor.

It is claimed on behalf of the libellant that Walker's appearance in the cause was for Philip Dutcher, and bound him, and that therefore his interest is cut off by the decree; and, if this is not so, that then Philip Dutcher's interest is cut off because he failed to appear. Testimony has been taken in respect to the authority, if any, which Walker had to appear on behalf of Philip Dutcher, and it shows that Philip Dutcher knew nothing of the proceedings in this court, and never gave any authority to any person to employ a proctor to appear for him; that the master was using the boat under an agreement with Philip Dutcher, which was in effect an agreement to sell the boat to him upon the payment of a certain price, of which he had paid part; that the master employed Walker to appear and defend the suits; that he represented to him that one Dutcher was one of the owners, and that he, the master, also had an interest, and that still another person was interested in her; that Walker advised the master that he must give security in order to release the boat; that the master professed to attempt to do so, but was unable to obtain bail for her. And after the other libels were filed, and the claims

.seemed to exceed the value of the boat, Walker, with the approval of the master, and to save expense, gave the consent to the decree of condemnation and sale, and also the consent for the distribution of the proceeds. Neither the master nor Walker received any part of the proceeds. The evidence fails to show any fraud on the part of Walker or of the purchaser, Murtagh, and this libellant in this suit was a purchaser in good faith from Murtagh's executor.

So far as appears, the claims for which the several libels were filed were valid liens on the boat, and the evidence does not show that she was then worth more than $600, the price paid by Murtagh. On this state of facts the decree of condemnation and sale are conclusive in favor of the purchaser, notwithstanding any irregularity in the notice given, or intended to be given, to parties in interest, by publication. A purchaser in good faith under a marshal's sale, upon a decree of a court of admiralty, will be protected in his title if the court had jurisdiction to decree the sale. The rules of the court require notice by publication before a default can be entered. If these rules have not been observed it is good ground for opening the decree and letting in a party to defend. *The Hornet*, Abb. Adm. 57. But the decree is valid .until set aside or reversed, and cannot be attacked collaterally. Jurisdiction over the vessel is acquired by its seizure by the marshal under the process of the court, and this seizure and possession by the marshal are, in view of the law, notice to all persons interested of the pendency of the proceedings, and of their right to intervene and protect their interests. Thus, in the case of *The Mary*, 9 Cranch, 126, 144, Chief Justice Marshall says: "The whole world, it is said, are parties in an admiralty cause; and, therefore, the whole world is bound by the decision. The reason on which this *dictum* stands will determine its extent. Every person may make himself a party, and appeal from the sentence; but notice of the controversy is necessary in order to become a party, and it is a principle of natural justice, of universal obligation, that before the rights of an indivual be bound by a judicial sentence he shall have notice, either actual or implied, of the proceed-

ings against him. Where these proceedings are against the person notice is served personally or by publication; where they are *in rem* notice is served upon the thing itself. This is necessarily notice to all those who have any interest in the thing, and is reasonable because it is necessary, and because it is the part of common prudence, for all those who have any interest in it, to guard that interest by persons who are in a position to protect it. Every person, therefore, who could assert any title to *The Mary* has constructive notice of her seizure, and may fairly be considered as a party to the libel."

In *Hollingsworth* v. *Barbour*, 4 Pet. 474, Mr. Justice Baldwin, delivering the opinion of the supreme court, cites and approves the following, from the opinion given below: "It is an acknowledged general principle that judgments and decrees are binding only on parties and privies. The reason of the rule is founded in the immutable principle of natural justice, that no man's right should be prejudiced by the judgment or decree of a court without an opportunity of defending the right. This opportunity is afforded, or supposed in law to be afforded, by a citation or notice to appear actually served, or constructively, by pursuing such means as the law may in special cases regard as equivalent to personal service. The course of proceeding in admiralty causes, and some other cases where the proceeding is strictly *in rem*, may be supposed to be exceptions to this rule. They are not properly exceptions. The law regards the seizure of the thing as constructive notice to the whole world; and all persons concerned in interest are considered as affected by this constructive notice."

In *Thompson* v. *Tolinie*, 2 Pet. 157, 163, Mr. Justice Thompson says: "The general and well-settled rule of law in such cases is that when the proceedings are collaterally drawn in question, and it appears upon the face of them that the subject-matter was within the jurisdiction of the court, they are voidable only. The errors and irregularities, if any exist, are to be corrected by some direct proceeding, either before the same court, to set them aside, or in an appellate court. If there is a total want of jurisdiction the proceedings are void and a mere nullity, and confer no right and afford no justification,

v.3,no.15—58

and 'may be rejected when collaterally drawn in question." And at page 169 he says: "The jurisdiction of the court (under whose order the sale was made) over the subject-matter appears upon the face of the proceedings, and its errors or mistakes, if any were committed, cannot be corrected or examined when brought up collaterally as they were in the circuit court."

In *Voorhees* v. *Bank of the United States*, 10 Pet. 449, 477, it is said: "The purchaser is not bound to look beyond the decree, when executed by a conveyance, if the facts necessary to give jurisdiction appear on the face of the proceedings, nor to look further back than the order of the court. 'If the jurisdiction was improvidently exercised, or in a manner not warranted by the evidence before it, it is not to be corrected at the expense of the purchaser, who had a right to rely upon the order of the court as an authority emanating from a competent jurisdiction.' 2 Pet. 163, 168. 'When a court has jurisdiction it has the right to decide every question in the cause; and, whether the decision be correct or not, its judgment, until reversed, is regarded as binding in every other court.' In the *United States* v. *Adredondo* it was laid down as a universal principle that when power or jurisdiction is delegated to any public officer or tribunal over a subject-matter, and its exercise is confided to his or their discretion, the acts so done are valid and binding as to the subject-matter, and individual rights will not be disturbed collaterally for anything done in the exercise of that discretion within the authority and power conferred. The only question which can arise, between an individual claiming a right under the acts done, and the public or any person denying their validity, are power in the officer and fraud in the party. All other questions are settled by the decision made or act done by the tribunal or officer, unless an appeal or other revision of their proceedings is prescribed by law." See, also, *U. S.* v. *Arredondo*, 6 Pet. 691, 729.

In *Grignon's Lessee* v. *Astor*, 2 How. 319, 343, the court say, after citing the cases of *Thompson* v. *Tolinie* and *Voorhees* v. *Bank of U. S.*: "We do not deem it necessary, now or hereafter, to retrace the reasons or authorities on which the de-

cisions of this court, in that or the cases which preceded it, rested; they are founded on the oldest and most sacred principles of the common law. Time has consecrated them. The courts of the states have followed and this court has never departed from them. They are rules of property on which the repose of the country depends. Titles acquired under the proceedings of courts of competent jurisdiction must be deemed inviolable in collateral actions, or none can know what is his own."

The same doctrine, as to the conclusive character of a decree or judgment of a court having jurisdiction of the subject-matter, and the absolute validity of a title made under such decree, is declared in *Griffith* v. *Bogert*, 18 How. 158, 163, and *Beauregard* v. *City of New Orleans*, Id. 497, 502. In the last case the court say: "And, when the object is to sell the real estate of an insolvent or embarrassed succession, the settled doctrine is, there are no adversary parties; the proceeding is *in rem*; the administrator represents the land. They are analogous to proceedings in admiralty, where the only question of jurisdiction is the power of the court over the thing—the subject-matter before them—without regard to the parties who may have an interest in it. All the world are parties. In the orphan's court, and all the courts which have power to sell the estates of decedents, their action operates on the estate—not on the heirs of the intestate. A purchaser claims not their title, but one paramount. The estate passes by operation of law."

In *Florentine* v. *Barton*, 2 Wall. 210, 216, where the title of a purchaser under a sale by order of a court, to pay the debts of a deceased owner, was in question, Mr. Justice Grier says: "The court has power over the subject-matter and the parties. It is true in such proceedings there are no adversary parties, because the proceeding is in the nature of a proceeding *in rem*, in which the estate is represented by the administrators, and, as in a proceeding *in rem* in admiralty, all the world are parties. In making the order of sale the court are presumed to have adjudged every question necessary to justify such order or decree, viz.: the death of the owner; that the peti-

tioners were his administrators; that the personal estate was insufficient to pay the debts of the deceased; that the private act of assembly, as to the manner of sale, was within the constitutional power of the legislature; and that all the provisions of the law, which are directory to the administrators, have been complied with. The court having a right to decide every question which occurs in a cause, whether its decision be correct or otherwise, its judgment, until reversed, is binding upon every other court. The purchaser under such a sale is not bound to look further back than the order of the court, or to inquire as to its mistakes. The court is not bound to enter on record the evidence on which any fact was decided. The proceedings on which the action of the court is grounded are usually kept on separate papers, which are often mislaid or lost. A different doctrine would (especially after a lapse of over 30 years) render titles under a judicial sale worthless, and a mere trap for the unwary. These propositions will be found discussed at length, and fully decided by us, in *Grignon's Lessee* v. *Astor*. Any further argument in vindication of them is superfluous."

In *The Moses Taylor*, 4 Wall. 411, 427, the court say : "The action against the steamer by name, authorized by the statute of California, is a proceeding in the nature and with the incidents of a suit in admiralty. The distinguishing and characteristic feature of such suit is that the vessel or thing proceeded against is itself seized and impleaded as the defendant, and is judged and sentenced accordingly. It is this dominion of the suit in admiralty over the vessel or thing itself which gives to the title made under its decrees validity against all the world. By the common-law process, whether of mesne attachment or execution, property is reached only through a personal defendant, and then only to the extent of his title. Under a sale, therefore, upon a judgment in a common-law proceeding, the title acquired can never be better than that possessed by the personal defendant. It is his title, and not the property itself, which was sold."

In *Harvey* v. *Tyler*, 2 Wall. 328, 341, the court say : "In reference to these (*i. e.*, courts of general jurisdiction) the general

rule is that every presumption not inconsistent with the record is to be indulged in favor of their jurisdiction; and their judgment, however erroneous, cannot be questioned when in-introduced collaterally, unless it be shown affirmatively that they had no jurisdiction of the case."

That the seizure by the officer of the court under its precept is what gives a court of admiralty, or a court proceeding strictly *in rem*, jurisdiction of the subject-matter, and power to order its sale, is further declared in *Miller* v. *U. S.* 11 Wall. 268, 294, *et seq.* In *Ray* v. *Norseworthy*, 23 Wall. 128, it was held that the district court, sitting in bankruptcy, could not order the sale of the bankrupt's mortgaged property, discharged of the mortgage, without notice to the mortgagee. But in that case there was no seizure of the thing itself which could operate as a constructive notice to all the world. The court say, (p. 136:) "No man is to be condemned without the opportunity of making a defence, or to have his property taken from him by a judicial sentence without the privilege of showing, if he can, that the pretext for doing it is unfounded. Every person, as this court said in the case of *The Mary*, 9 Cranch, 126, 144, may make himself a party to an admiralty proceeding and appeal from the sentence, but notice of the controversy is necessary in order to enable him to become a party. Authorities to the same effect are very numerous; nor is there any well-considered case which gives any support to the proposition that the judgment, order, sentence, or decree of a court, disposing of property subject to conflicting claims, will effect the rights of any one not a party to the proceeding, and who was never in any way notified of the pendency of the proceeding." The court does not, in this reference to the case of *The Mary*, intimate or hold that the seizure in an admiralty case is not in itself constructive notice, or that any notice beyond that is essential to the jurisdiction in proceedings *in rem*. The cases cited in support of the reasoning of the court clearly point out the distinction between cases *in rem* and cases *in personam*, and that, in respect to the latter, notice either personally or by such publication as the law in the particular case declares sufficient, is essential to

give the court jurisdiction, but that in cases *in rem* the seizure is notice. There is nothing to the contrary of this in *Nations v. Johnson,* 24 How. 195, 205, or *The Lottawanna,* 20 Wall. 201, 210. The case of *Shelton* v. *Tiffin,* 6 How. 163, 186, relied on by respondent's counsel, only holds that the court, in an action *in personam,* acquires no jurisdiction of the person of the defendant by the appearance of an attorney of the court for him, without authority in fact to appear, and that a purchaser under a marshal's sale on execution, based on a judgment in such case, took no title as against the defendant in the suit for whom the attorney assumed to appear. The case, therefore, is not in conflict with those cited above. Whether an admiralty sale by the marshal would be invalid upon proof of the proctor's want of authority, if the seizure were not in itself constructive notice to all the world, it is unnecessary to determine. It has been said that the relation of the proctor to the cause is somewhat different from that of an attorney. *The Brig Harriet,* Olc. 222. The cases of *Boswell's Lessee* v. *Otis,* 9 How. 336, 348, and *The Globe,* 2 Blatchf. 427, 431, are also to the effect that no personal notice is necessary to the jurisdiction in cases strictly *in rem.* The case of *The Tremont,* 1 Wm. Rob. 164, recognizes the principle that a sale of a vessel under the decree of a court of admiralty is valid against all the world.

In the present case it may be assumed that the publication of notice of the seizure of the boat was not such as the rules of the court require. The publication by the marshal of the order for all parties to appear, and of the sale of the boat under his writ, were in the name of the canal-boat Noxon, whereas her true name was A. Noxon. The names Noxon and A. Noxon must be held to be essentially different names. In principle they are unlike, as would be the names of Smith and Jones, and if any publication, according to the rules and practice of the court, is essential to the jurisdiction and to uphold the purchaser's title, the jurisdiction and the title must fail. But while the rules and the practice of the court require notice by publication, these rules and this practice have not the force of statutory requirements, nor do they prescribe

such publication as an absolutely essential prerequisite, either to the assumption of jurisdiction or to the exercise of the power of the court to condemn and sell the vessel to satisfy a maritime lien. They are precautionary measures, of the greatest value and importance as such, to prevent possible injustice, and to secure, as far as is consistent with the speedy action of the court in hearing and determining the cause, an actual notice to the parties who have already, by the seizure, constructive notice of the proceedings. And the publication of the notice of sale undoubtedly has the further object of securing a fair price upon the sale. But the disregard of the rules in this respect, in whole or in part, through mistake or inadvertence, while it may furnish a most conclusive ground for opening a decree, or, perhaps, for reversing it on appeal, is simply error or irregularity. It does not make the proceedings null and void, or the less binding on all the world. The rules in admiralty prescribed by the supreme court are obligatory upon this court, and one of those rules (rule 9) requires notice to be given in a newspaper of every seizure in cases *in rem.* But the rules, though obligatory, are obligatory only as rules of practice. Their non-observance is only error, for which the remedy is by appeal, or on application for opening the decree. See *Ex parte Poultney*, 12 Pet. 472, 473; also, *Fraser* v. *Prather*, 1 MacArthur, 206, 215.

The monition was served on the canal-boat A. Noxon. That the boat which is the subject-matter of this suit was the same boat which the marshal seized, and on which, according to the practice of the court, he posted, or left with the person in charge of her, a notice of the seizure, the cause, and the time for parties to appear, and that he maintained his seizure by an open and notorious possession, does not admit of doubt. This was notice to the master and to all the world, especially to those who put the master in charge of the boat to protect their interest, of the fact of the filing of the libel, the seizure, and the day of appearance. On that day no one appeared except the person or persons, whoever they were, who appeared through Mr. Walker. It is said there is nothing to show that there was the usual proclamation made, and that

no default of all who did not appear was entered. If so, there was a departure from the usual practice of the court. But every intendment, not inconsistent with the record, must be indulged to support the decree and the purchaser's title. The record does not show that a proclamation was not made, nor that a default was not taken. It may have been done and the clerk may have failed to note it. But if these formalities were not observed, it is not perceived that the failure was anything more than error or irregularity. The substantial consideration is that the owners had constructive notice, and did not appear to defend their right. The court then had before it the fact that the vessel had been seized and held by the marshal, under his process, until its return day; that the process was duly served on the vessel itself, and that the only parties who appeared as claimants consented to a decree of condemnation and sale. Whoever it was who appeared by Mr. Walker had not made himself properly a claimant, since he had filed no sworn claim stating that he alone was the owner, nor given security for costs. His appearance might have been struck out on motion, and perhaps his consent was not necessary to the validity of a decree; but it was proper to have his consent, as appears to have been done. The circumstance that the decree recites the consent and does not recite the default of all other parties, is immaterial, all other parties being in fact in default by not appearing. The omission is a merely formal defect, which could be amended or entirely disregarded. The allegations of fraud contained in the answer are not sustained by the proofs. Murtagh, the libellant, had an equal right with all other persons to become a bidder and purchaser at the sale. The only difference that can be suggested between his position in that respect and that of any other person is that, being a party to the suit, he might be more directly chargeable with knowledge of circumstances, if there were any, in the course of the proceedings, indicating fraud. But there is no proof of fraud on his part.

Upon the whole case it must be held that however irregular and erroneous the decree may have been, it was not, by rea-

son of any irregularity shown, a nullity for want of jurisdiction or for want of power in the court to order the sale of the vessel. While the owner had not, in fact, such opportunity or chance of receiving actual notice as the court always designs to give, he had what the law pronounces sufficient constructive notice to make the decree operative upon the property itself. Fortunately, in the present case no actual injustice appears to have been done by his failure to receive actual notice. The proof is that the boat was of less value than the liens, to satisfy which she was sold, and they were claims paramount to his title. If this is so, the only right he has lost was that of redeeming her from liens exceeding her value. It is of the utmost importance to maintain to its full extent, so far as is consistent with justice and the acknowledged rules of law, the absolute validity of titles to vessels made under decrees of admiralty courts. Unless this is done, property in ships must be seriously impaired. In many cases, undoubtedly, where the rules of the court as to publication of notice are fully complied with, especially in the case of foreign ships, the owners have and can have no actual notice of the proceedings, or of the sale, nor any notice except such as is implied in the notice given by the seizure to those to whom they have entrusted the possession of the ship. The publication, in fact, does not and cannot, on account of their remoteness, reach them. Yet the powers of condemnation and sale, to satisfy maritime liens, given to courts of admiralty, and the prompt hearing and determination of such claims, which interrupt and prevent the use of the ship for the purpose for which she was designed, without waiting for actual notice to every party in interest, are but parts of that system of admiralty jurisdiction which is based upon and has grown out of the necessities and interests of commerce, and its universality throughout the civilized world is sufficient proof of its necessity and substantial justice.

The libellant is, therefore, entitled to a decree for the possession of the vessel. He also seeks in the same suit to establish a lien against the cargo for any unpaid freight money due from the shippers of the cargo to the respondent Susan

Dutcher.   It appears that the cargo was shipped under a charter-party made between Philip Dutcher and the shippers, who appear here as respondents to resist this claim.   Some small amount of the freight reserved is still unpaid.   I can see no principle upon which it can be recovered in this suit. The admiralty courts take no jurisdiction of matters of account, even between part owners.   *Kellum* v. *Emerson*, 2 Curt. 79, 84;   *The Orleans* v. *Phœbus*, 11 Pet. 175.   Still less should they attempt to settle accounts between strangers to the controversy, in a suit for possession, and the respondent who has been in possession, and who may be accountable to the true owner for her earnings.   But for that account the owner must seek another tribunal which has jurisdiction of such suits.   The respondents, who appear for the cargo, are entitled to a return of the sum deposited by them in the registry to meet this claim.

Decree for the libellant for possession of the boat, with costs against the respondent Susan Dutcher, and for the respondents, the owners of the cargo, restoring to them their deposit and dismissing the libel as to them with costs.