## GEORGE M. WARREN *vs.* JOHN E. KELLEY.

### Hancock.    Opinion August 9, 1888.

*Shipping.    Lien.    Admiralty jurisdiction.    Constitutional law.    R. S., c.*
*91, § 8.    Trespass.    Officer.    Attachment.    Damages.*

For repairs upon a foreign vessel, that is, a vessel out of the state or country where owned, the general maritime law gives the party furnishing the same lien upon the vessel for his security, and he may maintain a suit in admiralty to enforce his right.

In such case, if the party seeks to enforce his lien, his remedy belongs exclusively in the district courts of the United States.

Where a party furnishes materials or repairs upon a vessel in her home port, no lien therefore is implied or exists by the general maritime law as accepted and received in this country.

So long as Congress does not interpose by general law to regulate the subject, the state, although it cannot create a lien and attach it to a service or contract not maritime in its nature, and thereby extends the jurisdiction of the United States Courts, may extend a lien based upon a maritime service or contract to parties furnishing repairs or necessaries to a vessel in her home port.

But in such case the state cannot confer jurisdiction upon its own courts so as to enable them to proceed *in rem* for the enforcement of liens thus created by statute; for, by the later rules and decisions of the Supreme Court of the United States, jurisdiction for the enforcement of such liens, by process *in rem*, belongs exclusively to the district courts of the United States.

That portion of sec. 8, c. 91, R. S., which provides that "whoever furnishes labor or materials for a vessel after it is launched, or for its repair, has a lien on it therefor to be enforced by attachment within four days after the work is completed," so far as it authorizes proceedings *in rem* in the courts of this state for the enforcement of lien for labor, materials or repairs upon a domestic vessel, or foreign sea-going vessel, is in contravention of the Constitution and the Laws of the United States.

Where the tribunal from which the process issues has jurisdiction, and the process is apparently regular, the officer executing it may safely follow and obey it, and justify his acts under it.

But where the law is unconstitutional it confers no jurisdiction; the process is not merely voidable but absolutely void, and the proceedings of an officer under it cannot be justified.

In an action of trespass, where the plaintiff is general owner of the property or has only a special ownership and is answerable over to others, the true rule of damages is the value of the property at the time of conversion with interest thereon to the time of verdict

The rule in relation to mitigation of damages stated.

ON exceptions and motion to set aside the verdict.
The opinion states the case.

*A. P. Wiswell*, for the plaintiff.

The action can be maintained by this plaintiff. 1 Chitty, Pl. 189 ; *Lunt* v. *Brown*, 13 Maine, 236 ; *Freeman* v. *Rankins*, 21 Maine, 446 ; *Staples* v. *Smith*, 48 Maine, 470 ; *Parsons* v. *Dickinson*, 11 Pick. 352 ; *Ayer* v. *Bartlett*, 9 Pick. 156 ; Abbott, Shipping, 2 ; 3 Kent, Com. 130 ; U. S. R. S., § 4192 ; *Perkins* v. *Emerson*, 59 Maine, 319 ; *White's Bank* v. *Smith*, 7 Wall. 646. Measure of damages. See : *Carpenter* v. *Dresser*, 72 Maine, 377

So much of R. S., c. 91, § 8, as authorized the court to enforce a lien for repairs upon an enrolled vessel by proceedings *in rem* is unconstitutional. *Hayford* v. *Cunningham*, 72 Maine, 128 ; U. S. Const. Art. 3, § § 1, 2 ; *Martin* v. *Hunter*, 1 Wheat. 334 ; *The Moses Taylor*, 4 Wall. 411 ; *The Hine* v. *Trevor*, 4 Wall. 555 ; *Ferry Co.* v. *Beers*, 20 How. 399 ; *The General Smith*, 4 Wheat. 438 ; *The Lottawanna*, 20 Wall. 219 ; 21 Wall. 559 ; 5 Am. Law Review, 603 ; *The Red Wing*, 14 Fed. Pep. 604 ; *The Howard*, 29 Fed. Rep. 604 ; *Stuart* v. *Potomac Ferry Co.* 5 Hughs C. C. Rep. 372 ; *The Alanson Sumner* 28 Fed. Rep. 670 ; *U. S.* v. *B. & H. Co. Ferry Co.* 21 Fed. Rep. 331.

Where the process is void for want of jurisdiction over the subject matter or person, the officer is liable in trespass, who executes it. *Savacool* v. *Boughton*, 5 Wend. 170 ; 21 Am. Dec. 181 ; *Dynes* v. *Hoover*, 20 How. 65 ; *Clark* v. *May*, 2 Gray, 410 ; *Thurston* v. *Adams*, 41 Maine, 419 ; *Elsemore* v. *Longfellow*, 76 Maine, 128 ; *Poindexter* v. *Greenhow*, 114 U. S. 269 ; *Fisher* v. *McGirr*, 1 Gray, 45 ; 3 McLean, 107 ; *Camp* v. *Mosely*, 2 Fla. 171 ; *Campbell* v. *Sherman*, 35 Wis. 103 ; 1 Chitty Pl. 535 ; *Washburn* v. *Mosely*, 22 Maine, 160 ; *Moore* v. *Knowles*, 65 Maine, 493 ; *Hollingsworth* v. *Dow*, 19 Pick. 228 ; *Globe Works* v. *Wright*, 106 Mass. 207.

*William L. Putman and Joseph M. Trott*, for the defendant.

The principal question which seems to have been raised at *nisi prius*, is a branch of the discussion which appeared in *Hayford* v. *Cunninghan*, 72 Maine, p. 134.

There is no stability in the decisions of the Supreme Court of the United States, nor indeed any decision nor anything except mere *dicta* of conflicting and varying character; and therefore nothing to justify this court in withdrawing its protection from its officers, who in good faith have been obeying the express orders of this court in enforcing literally its precepts, following the forms which have been in use, with changes in detail, since A. D. 1834, which were first questioned in *Hayford* v. *Cunningham*, *ante*, in A. D. 1881, and were not even then authoritatively determined against.

Even as late as *Homer* v. *The Lady of the Ocean*, 70 Maine, p. 350, decided November 12, A. D. 1879, although the lien was refused, no question was made on this score.

It cannot be questioned, that, if the state court should undertake to enforce by an admiralty proceeding an admiralty lien, the action of the state court would be reversed by the Supreme Court of the United States on writ of error.

This was so expressly decided in *The Hine* v. *Trevor* 4 Wallace, p. 556, *The Moses Taylor*, 4 Wallace, p. 411 and *The Belfast*, 7 Wallace, p. 624; and we are quite confident that anything which goes beyond these decisions, are mere *dicta*, which can be met to a certain extent by other *dicta*.

For example. The case of the *The Lottawanna*, 21 Wallace, p. 558, which is the case ordinarily relied on as laying down the rule, that state courts have no jurisdiction to enforce a lien which has no existence except under a state statute, came up from the admiralty court; and the real pith of the decision was, that the admiralty court could not enforce the lien, because the conditions attached to the lien by the state law had not been complied with.

Judge BRADLEY, who delivered the opinion of the court, on p. 580 said: "The state could not confer jurisdiction upon the state courts to enable them to proceed *in rem* for the enforcement of liens created by state laws."

We wish to preserve as we go along the following from the dissenting opinion of Judge CLIFFORD, on p. 602: "State lien laws are too complicated and pregnant with too many conditions and special regulations in their machinery, to be administered in

a court of admiralty, even if it be competent for this court to provide for the exercise of such a jurisdiction by a district court sitting as a court of admiralty."

In the case of *The Edith*, which is referred to in 72 Maine, as it appears in Blatchford's reports, but was finally disposed of in 94 U. S. p. 518, in A. D. 1876, the Supreme Court reiterated the pith of the decision in the case of *The Lottawanna*, by holding, that a creditor claiming the benefit of the provisions of the statute of New York, purporting to give a lien for materials furnished for repairing a vessel at a home port, must take it subject to all the conditions which the statute imposed.

In *Edwards* v. *Elliott*, 21 Wallace, p. 532, it was held, that there was no admiralty lien arising on a contract for building a ship; and the proceeding in the state court for enforcing that lien was sustained.

We have been unable to find any decision of the Supreme Court of the United States, any such weight of authority among the judges of the Supreme Court as indicated even by *dicta*, which overcomes the expression of Judge CLIFFORD, already cited, that "state lien laws are too complicated and pregnant with too many conditions and special regulations in their machinery to be administrated in a court of admiralty."

*Johnson* v. *The Chicago Elevator Co.* 119 U. S. 388, decided in December A. D. 1886, would seem to sustain our view of the effect of the previous decisions; because the court there said p. 397, that the "cases in which the state statutes have been held void by this court to the extent in which they authorized suits *in rem* against vessels because they gave to the state courts admiralty jurisdiction, were only causes where the causes of action were cognizable in the admiralty. Necessarily no other cases could be embraced."

This harmonizes with the expression contained on p. 133, of *Hayford* v. *Cunningham*, namely: that "the tendency of judicial opinion seems to be, that the jurisdiction of the state court shall terminate where the National jurisdiction begins; that there shall not be concurrent jurisdiction in any question of admiralty to be settled by process and proceedings *in rem*."

We do not mean, of course, to include or exclude that narrow class of cases, where a proceeding *in rem* against a vessel might possibly be regarded as a regulation of commerce, nor another class of cases like that of *Ex parte Pennsylvania*, 109 U. S. p. 174, where it is held that a claim which is a maritime claim, is none the less such because the amount due is determined by a state statute.

*Johnson* v. *The Chicago Elevator Co.* before referred to would seem to be clearly one of these cases, except for the fact, that there the attachment was made of "all the right, title and interest" of the owner in and to the tug.

With that exception the proceedings were in all respects substantially like those under our statute ; but on p. 400, the court expressly laid aside the question generally discussed, saying : "Whether proceedings under the Illinois statute different from those had in this case, may not be obnoxious to some of the objections raised, is a question which must be left to be determined when it properly arises."

Page 398, the court discussed *Leon* v. *Galceran*, 11 Wallace, p. 185, and said it was very much like the case then before the court, and p. 399 it explained and apparently approved the case. And this must be regarded as the latest authoritative expression of the Supreme Court on the precise question which our statute raises.

Our Revised Statutes, chapter 91, section 8 in the very breath in which it gives the lien, adds "to be enforced by attachment within four days after the work is completed."

We do not say that the Supreme Court might not hold that a lien given as our statute gives this lien, could be enforced by the admiralty court. We merely say, it is not yet so decided, that there is great force in the observation of Judge CLIFFORD, and that in the absence of authoritative decision of the Supreme Court of the United States, and in view of its shifting positions on this and connected questions, our court should adhere to what has been for fifty years the statute law of the state.

Our position is not contravened by the admitted principles of admiralty law, that a lien for the repair of a vessel is a maritime

contract on which an action *in personam* would lie in admiralty, whether there is a lien or not, and that, if a pure lien, not hampered by statute restrictions and limitations, is attached by the local law, it at once adheres to the maritime contract and can be enforced by the admiralty court, as was held to be the law in the *Gen. Smith*, 4 Wheaton, p. 438, in *Peyroux* v. *Howard*, 7 Peters, p. 324, and in the *Steamer St. Lawrence*, 1 Black, p. 529.

We admit this principle, notwithstanding its apparent denial by Judge NELSON, delivering the opinion of the court in *Maguire* v. *Card*, 21 Howard, p. 248, is another illustration of the instability of the Supreme Court on these questions.

But in *The St. Lawrence*, p. 530, the court said: "There could be no embarrassing difficulties in using the ordinary process *in rem* of the civil law, if the state law gave the lien in general terms without specific conditions or limitations inconsistent with the rules and principles which govern implied maritime liens."

The state lien which came under discussion in the case of *The St. Lawrence*, *ante*, is found in the Revised Statutes of New York, published by Banks and Bros. 7th Edition, Vol. 3, p. 2404. The first section gives absolutely a lien on the vessel; all provisions as to its continuance and method of the enforcement being in subsequent sections of the statute. In this respect the New York statute differs widely from our own, the language of which gives, "a lien to be enforced by attachment within four days after the work is completed," and proceeds immediately in the next section to prescribe the form of attachment.

Moreover the New York statute, like the California, Iowa and Alabama statutes which we have already considered in the cases of *The Moses Taylor*, *ante*, *The Hine* v. *Trevor*, *ante*, and *The Belfast*, *ante*, and like the Virginia statute on which the case of *The Steamers Raleigh*, *Canknon Astoria*, 2 Hughes, p. 44, rested, gave a direct proceeding against the vessel, taking no cognizance of the owner or debtor; and in this respect it was unlike ours.

The language of the court in *The Harrisburg*, 119 U. S. p. 199, while the case itself is not much in point, illustrates the

propositions made by Judge CLIFFORD, Judge TANEY, and in the case of *The Edith, ante.* We quote from p. 214 where the court said : "The liability and the remedy are created by the same statute, and the limitations of the remedy are therefore to be treated as limitations of the right."

In the Maine statute the liability and the remedy are created, not only by the same statute, but in the same breath.

Some expressions in *Ex parte Royall*, 117 U. S. p. 248, will be found on proper examination, not to be so extreme as they appear at first reading.

The court said : "If the local statute under which *Royall* was indicted, be repugnant to the constitution, the prosecution against him has nothing upon which to rest, and the entire proceeding against him is a nullity, as was stated in *Ex parte Siebold*, 100 U. S. p. 376. An unconstitutional law is void and is as no law, and an offence created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment." And similar phraseology is quoted from *Ex parte Yarborough*, 110 U. S. pp. 651 and 654.

Now while these expressions are extreme, an examination of the context shows, that there was no intention of giving such language the effect which is claimed by the plaintiff in this case.

*Ex parte Parks*, 93 U. S. p. 18, where the Supreme Court of the United states refused on *habeas corpus* to investigate the proceedings of the District Court, on the claim that the matter for which the party was indicted in the latter court was not a crime against the laws of the United States, illustrates our next point ; and we will close this proposition by calling attention to the fact, that in every case in this state in which it was suggested that the process of the court might not protect the officer, the language was limited to inferior courts. See *Waterville* v. *Barton*, 64 Maine, p. 326 ; *Thurston* v. *Adams*, 41 Maine, p. 422, and all other cases of a similar character.

Among all the cases which this long controversy has given rise to, no case can be found where, for want of jurisdiction of the state court to proceed *in rem* against a vessel, an action has been maintained against an officer serving the process of the

state court, either in the state or United States court; although it probably will be found, and is not at all inconsistent with our position, that a proceeding *in rem* from a state court, even though it went to judgment and the vessel was sold, would not bind the title of the vessel as against persons who did not appear in the suit. To this extent the proceedings of the state court would probably be void; and in this respect the analogy would be perfect to a judgment rendered *in personam* by the state court against a non-resident on whom service had not been made. Such judgment would be void; yet the officer would not be liable for serving an execution in due form issued from the clerk's office of the Supreme Judicial Court for enforcing such ineffectual judgment.

When the new rule was adopted in A. D. 1872, the effect was, not to render our statute unconstitutional, and that is in no sense the proper word to apply; it only crowded out its operation to a certain extent.

The effect was precisely the same as the effect of the insolvency law in this state, as explained *In re Damon*, 70 Maine, p. 153.

The same rule was held and elaborated by the Supreme Court of Massachusetts in *Lothrop* v. *The Highland Foundry Co*. 128 Mass. p. 120.

The analogy between these insolvency statutes and the state statute about proceedings against vessels being complete, the Supreme Court of Massachusetts in *Day* v. *Bardwell*, 97 Mass. p. 246, did not hesitate to pass on the question of the jurisdiction of the courts of Massachusetts under the insolvent law, between March 2, A. D. 1867, and June 1, A. D. 1867, although it involved the further question, whether the passage of the bankrupt law on the second of March superseded the insolvency statute in Massachusetts; precisely as this court, on the return of the original process served by the sheriff, might have proceeded to determine a like question though pointing in a somewhat different direction.

We have many inland vessels propelled by steam and others propelled by sail; the United States refused to take jurisdiction for

inspection of the former, and we have an express statute directing such inspecting by state officers.

Even if the statute had been in a certain degree unconstitutional, or if it assumed express jurisdiction over all vessels maritime and others, yet there would be no principle to prevent a severance, or to prevent our court from taking jurisdiction over the class of inland vessels of which we have just spoken. This was done in *Edwards* v. *Elliot*, 21 Wall. p. 532, where the statute is stated on p. 533, to embrace "building and repairing;" yet the Supreme Court of the United States sustained state jurisdiction of a lien accruing from building.

An analogy is found in *Schwartz* v. *Drinkwater*, 70 Maine, p. 409.

An illustration is found in *Packet Co.* v. *Keokuk*, 95 U. S. p. 80. This is the more striking, because the language of the ordinance in that case was so broad, that it was in part unconstitutional on its face.

The ordinance laid in form a tonnage tax ; and as was explained in *Baldwin* v. *Franks*, 120 U. S. p. 688, it was so broad, that it "included a part of the shore declared to be a wharf, which was in its natural condition unimproved."

Another analagous case, *State* v. *Gurney*, 37 Maine, p. 149.

The court closed the opinion on p. 156 as follows : "An indictment in the state court regards only the law of the state against which the offence is committed. The statutes or law of the state which create the offence and impose the penalty, are alone to be regarded in framing the indictment. It would be a novel doctrine, to require that a defence arising from treaties with or under the statutes of another government, be negatived in an indictment for an offence against the laws of this state."

This case was reaffirmed in *State* v. *Robinson*, 39 Maine, p. 153.

On the whole, here is a process, regular in form, issuing from the highest court of the state, relating generally to a matter as to some particulars of which the court certainly had final and exclusive jurisdiction. The case seems to be entirely within the principles of *Ex parte Parks*, 93 U. S. p. 18, already referred to.

We are unable to see anything in the case distinguishing it from the familiar principles laid down in the familiar case of *Gurney* v. *Tufts*, 37 Maine, p. 134, *Waterville* v. *Barton*, 64 Maine, p. 326; and *Elsemore* v. *Longfellow*, 76 Maine, p. 130; in the latter of which the court, speaking of the process even of inferior tribunals, said that the officer is protected, unless the process is void and unless he can see from the face of the process itself, that it is void.

The fundamental principles of law applicable to the regularity of judicial proceedings, will not permit an officer to determine a question of this kind, either from his own knowledge or from any other proofs whatsoever. This was expressly determined in *Watson* v. *Watson*, 9 Connecticut, p. 140, an action against a sheriff for replevying property, which was not by law repleviable.

"It is incomprehensible," said Lord KENYON, in *Belk* v. *Broadbent and ux.* 3 Term, Rep. 183, 185, "to say, that a person shall be considered a trespasser who acts under the process of the court."

The officer is entitled to set up everything in defence or in mitigation of damages which McDougall could do, if defendant in the case. *Townsend* v. *Newell*, 14 Pick. pp. 332 and 336.

Without reciting the circumstances, it is plain that the vessel was put into McDougall's possession, and that he had a common law lien for his expenditures on her. Maclachlan on Shipping (2nd. Ed.), p. 7.

The sheriff testifies, that he merely stepped aboard the vessel and posted his notice, and clearly he did not interrupt McDougall's possession. This was substantially the course taken in *Palmer* v. *Tucker*, 45 Maine, p. 316; where it was held, that a common law lien on a lot of logs was preserved under somewhat similiar circumstances.

According to *Titcomb* v. *McAllister*, 77 Maine, p. 353, at the time the vessel was attached, Warren was simply a mortgagee.

Inasmuch as he could be "indemnified by a sum of money less than the full value of the vessel per the verdict," and inasmuch as what he may recover in excess of the sixteen hundred dollars, he must pay over to McDougall, the law will not permit

the recovery of money simply for the purpose of paying it back. *Chamberlin* v. *Shaw*, 18 Pick. 283.

FOSTER, J. Labor and materials were furnished for repairing the schooner *Corporal Trim*. Payment for the same was refused, and proceedings *in rem* were instituted to enforce a lien provided by statute against the vessel for which such labor and materials had been furnished. Process for the enforcement of the lien was placed in the hands of the defendant as sheriff of the county of Lincoln, and the vessel was seized and attached by him.

This suit is trespass against the officer by the mortgagee of said vessel. A verdict of $2,443.73 has been rendered against the defendant, and the case comes before this court on exceptions and motion.

The question presented for consideration on the exceptions involves the constitutionality of a portion of section 8, c. 91, R. S., and other provisions pertaining to that portion, which in terms provide for the enforcement of liens for *repairs* upon vessels. That portion of section 8 is as follows : . . . "and whoever furnishes labor or materials for a vessel after it is launched, or for its repair, has a lien on it therefor, to be enforced by attachment within four days after the work is completed,"

. . . In addition thereto subsequent sections provide for enforcing this as well as other liens named in the eighth section, specifying the form of the process *in rem* against the vessel itself substantially as in admiralty proceedings, with a separate judgment and execution against the vessel for the amount of the lien claim found to be due, and process for the sale of the vessel for the satisfaction of such lien.

It is admitted that the vessel was owned within the state, and that the materials and repairs were furnished at her home port, a port within the state where the vessel was owned. It is therefore a case of a domestic and not a foreign vessel ; of a domestic vessel with materials and repairs furnished in a home port.

The contention of the plaintiff is, that the contract and service for the materials and repairs were of a maritime nature, and, with reference to the enforcement of any lien therefor by

proceedings in rem, cognizable exclusively in the admiralty courts of the United States. And it is claimed that the statute authorizing the enforcement of such lien in the courts of this state, by proceedings of this kind, for repairs upon vessels, is unconstitutional, and therefore affords no protection to the officer acting under such process.

The question is squarely before us upon the case as it is presented, and must be directly met, notwithstanding that portion of the statute in reference to repairs upon vessels, and to the furnishing of labor or materials for the same after they are launched, has been repealed since this controversy arose.

The constitution of the United States (Art. III., § 2) ordains that "the judicial power shall extend . . to all cases of admiralty and maritime jurisdiction." And according to the highest judicial authority by which the terms of the constitution are construed, it was long ago settled that while congress can neither enlarge nor diminish this grant to the federal judiciary, it may designate the courts which shall exercise this jurisdiction. When this is done, no state law can enlarge or diminish the jurisdiction allotted to such courts.

In the proper exercise of this power by congress the Judiciary Act of 1789 was enacted constituting the district courts of the United States, by the ninth section of which it is provided that said courts "shall have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, . . saving to suitors in all cases the right of a common law remedy, where the common law is competent to give it." It would seem unquestionable, therefore, that the jurisdiction of the district courts of the United States extends over all admiralty and maritime causes exclusively, with the exception of such concurrent remedy as was given by the common law.

"Admiralty and maritime jurisdiction," according to the generally accepted and received use of the terms, extends to all things done upon and relating to the sea, to transactions relating to commerce and navigation, to damages and injuries upon the sea, and all maritime contracts, torts and injuries. *De Lovio* v. *Boit*, 2 Gallison, 468. But as applied in this country, with

its immense lakes and numerous navigable rivers, the doctrine in modern times has extended it " wherever ships float and navigation successfully aids commerce, whether internal or external." *The Hine* v. *Trevor*, 4 Wall. 563; *The Eagle*, 8 Wall. 15.

Before proceeding further it may be proper to notice the difference in reference to liens upon domestic and foreign vessels. For repairs upon a foreign vessel, that is, a vessel out of the state or country where owned, the general maritime law gives the party furnishing the same a lien upon the vessel for his security, and he may maintain a suit in admiralty to enforce his right. In such case if the party sees fit to enforce his lien, his remedy belongs exclusively in the courts of the United States. But where a party furnishes materials or repairs upon a vessel in her home port, no lien therefor is implied by the maritime law as accepted and received in this country. The presumption in such case is that credit is given to the owners and not to the vessel. The reason for the existence of the lien in one case and not in the other, as declared by the courts, is based upon the principles of the maritime law, and not upon the fact that one is a contract maritime in its nature, and the other not, for it is conceded by all the authorities that supplies, materials and repairs furnished to a vessel in her home port is a maritime contract. *Peyroux* v. *Howard* (*The Planter*), 7 Pet. 341; *The St. Lawrence*, 1 Black. 522; *The Lottawanna*, 20 Wall. 219; *The Lottawanna*, 21 Wall. 580; Abbott on Shipping, 143, 148.

But while by the general maritime law no lien exists in favor of parties furnishing repairs or necessaries to a vessel in her home port, it has been the admitted and recognized doctrine of our jurisprudence ever since the decision in *The General Smith*, 4 Wheat. 443, in 1819, that so long as congress does not interpose by general law to regulate the subject, the state, although it cannot create a lien and attach it to a service or contract not maritime in its nature and thereby extend the jurisdiction of the United States courts, (*Peyroux* v. *Howard*, (*The Planter*), *supra*; *Forsyth* v. *Phœbus*, (*The Orleans*) 11 Pet. 175, 184; *Roach* v. *Chapman* (*The Capitol*), 22 How. 129, 132; *The*

*Belfast,* 7 Wall. 644) may extend a lien based upon a maritime service or contract to parties thus furnishing such repairs or necessaries to such vessel. *The Belfast, supra*; *The Lotta-wanna,* 21 Wall. 580; *Edwards* v. *Elliott,* 21 Wall. 557.

As to the methods of enforcing such liens, whether in the state or United States courts concurrently, or in the one to the exclusion of the other, notwithstanding the provisions of the Constitution and of the Judiciary Act of 1789, are questions which have frequently been before the Supreme Court of the United States, and given rise to decisions which are not easy of reconciliation. While a careful examination of the decisions is proper to a correct understanding of this question, it is unnecessary to particularly trace them in this connection. In such examination, however, it becomes necessary to bear in mind that the want of a uniform system of admiralty administration in cases where local law or state statutes gave a lien upon the property where none existed by the general maritime law, led to the adoption of what is known as Rule XII in admiralty, in 1844, and the amendments thereto in 1859 and 1872.

For many years after the adoption of the Constitution, jurisdiction was concurrently exercised by the state and United States courts in reference to proceedings *in rem* for the enforcement of liens created by the statutes of the different states. The federal courts entertained jurisdiction and enforced liens which were not maritime or based upon maritime service or contract. Liens created by statute and applied to the construction and building of new vessels, which are land and not sea contracts, were enforced by the admiralty or district courts of the United States, as well as liens for materials or repairs upon them after they were built. But in *The People's Ferry Co.* v. *Beers,* 20 How. 393, in 1857, the court laid down the doctrine that a contract for the construction of a vessel is not maritime because it is neither made nor performed on the water, and that no maritime lien is created or exists by the performance of such a contract, and refused to recognize jurisdiction in the district courts in the enforcement of statutory liens attached to contracts for the original construction of vessels. *Roach* v. *Chapman*

(*The Capitol*), 22 How. 132; *Edwards* v. *Elliott*, 21 Wall. 532.

The decision in *Peyroux* v. *Howard* (*The Planter*), 7 Pet. 324, rendered in 1833, has been considered as establishing the principle that if a state statute gives a lien in its nature maritime, that is, founded upon a maritime contract, and the subject matter is within admiralty jurisdiction, the lien may be enforced by a suit *in rem* in the admiralty courts.

No principle of admiralty appeared to be better established in the United States than that which we have just stated—that where a local law attaches a maritime lien to a maritime service within admiralty jurisdiction, a suit to enforce such lien lies in the federal courts in admiralty, and that a lien for materials or repairs on a vessel engaged in maritime commerce, a sea-going vessel, is a maritime lien, and within admiralty jurisdiction. This doctrine was generally understood in the district courts, and was affirmed in *The General Smith*, 4 Wheat. 438, in 1819; *Peyroux* v. *Howard* (*The Planter*), 7 Pet. 324, in 1833; *Forsyth* v. *Phœbus* (*The Orleans*), 11 Pet. 175, in 1837.

It was after these decisions that Rule XII in admiralty was adopted, not as establishing the law, but assuming it to be settled, *first*, that there was no lien for materials or repairs on a domestic vessel unless by force of local or statute law; and, *second*, that if there was such a lien by local or statute law, it was enforcible in the admiralty courts of the United States. *The St. Lawrence*, 1 Black. 529.

This rule was changed in 1858 to take effect May 1, 1859, and by the change thus made process *in rem* was denied unless the lien was given by the maritime law. *Maguire* v. *Card* (*The Goliah*), 21 How. 248; *The St. Lawrence*, *supra*.

This change in the rule, while attempting to avoid the embarrassment arising in the federal courts from the varying and conflicting state laws, and the conflict of rights arising under them, (*The St. Lawrence*, *supra*) proved unsatisfactory, and after " diverse experiences and many agitations of the subject," the Supreme Court adopted a policy in accordance with the earlier decisions of that tribunal, and in 1872 the following rule was established : " In all suits by material men for supplies or

repairs, or other necessaries, the libellant may proceed against the ship and freight *in rem*, or against the master or owner *in personam.*" As was said by PETERS, C. J., in *Hayford* v. *Cunningham*, 72 Maine, 133, " the doors of the district courts, which had been since 1859 shut against suits like those now before us, were opened to them again. Since this date the opinion and feeling among the judges of the federal courts seem to be that their jurisdiction must be exclusive."

But in determining to what extent the legislature may go in creating or extending liens in matters of this kind, it is now too well settled to admit of doubt that the legislature of a state cannot grant admiralty jurisdiction to its own courts in matters within the jurisdiction of the district courts. The highest judicial tribunal in the land, in a line of decisions by which this court must be governed, has most emphatically asserted the doctrine and established the principle that the jurisdiction for the enforcement of a maritime lien, is, under the Constitution and the Judiciary Act of 1789, exclusively in the courts of the United States, and cannot be exercised by state courts, although conferred on them by statute.

The question was not directly decided until 1866, in the case of *The Moses Taylor*, 4 Wall. 411. The statutes of California had established a system of liens upon vessels, foreign and domestic alike, and authorized the courts of the state to enforce them by proceedings *in rem*. The liens created and the proceedings authorized had the character and incidents of admiralty liens and proceedings. The steamer *Moses Taylor* was seized and libelled in the state court of California by a proceeding *in rem* to enforce a lien for the breach of a contract to transport a passenger from Panama to San Francisco. The state court sustained jurisdiction, and the case was taken to the Supreme Court of the United States. The question was directly whether a state court can entertain an admiralty suit *in rem* to enforce an admiralty lien. The court was unanimous in holding that such jurisdiction was exclusively vested in the district courts of the United States, and that the provision in the Constitution by which the judicial power of the United States " shall extend

. . ' to all cases of admiralty and maritime jurisdiction," had, of itself, the effect to take such jurisdiction from the courts of the states. And it was further held that whether that was so or not, the Constitution at least authorized congress to vest the admiralty jurisdiction in federal courts exclusively of the state courts, and that congress had done this by the Judiciary Act of 1789, which provides that "the district courts shall have, exclusively of the courts of the several states, cognizance . . and shall also have exclusive original cognizance of all civil causes of admiralty and marine jurisdiction."

It was contended in argument, however, that a concurrent jurisdiction in the state courts was reserved for proceedings of this nature by the last clause of the Judiciary Act, "saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." But the court held that this does not save a proceeding *in rem* as used in the admiralty courts, and that such a proceeding is not a remedy afforded by the common law.

At the same term of the court came the decision in *The Hine* v. *Trevor*, 4 Wall. 555. The statutes of Iowa, like those of California, provided for its courts remedies and processes for enforcing liens on vessels, and under them proceedings had been had against the Hine for a collision on the Mississippi river. The state court sustained jurisdiction, and the case was taken to the Supreme Court of the United States. Following the decision in *The Moses Taylor* the court held exclusive jurisdiction in the district courts of the United States. "It is a little singular," say the court, "that, at this term of the court, we should for the first time have the question of the right of the state courts to exercise this jurisdiction, raised by two suits of error to state courts, remote from each other." The claim was also set up in that case that the proceedings authorized by the statutes of Iowa came within that clause of the Judiciary Act which saved to suitors the right of a common law remedy. But the court say that "the remedy pursued in the Iowa courts, in the case before us, is in no sense a common law remedy. It is a remedy

partaking of all the essential features of an admiralty proceeding *in rem.*"

In 1868, the same question arose in a case of contract in *The Belfast,* 7 Wall. 624, and received the same decision. The state court in Alabama had entertained proceedings to enforce a lien for breach of contract of affreightment, the statutes of that state having authorized the proceedings. Mr. Justice CLIFFORD, giving the opinion of the court, places the case on the authority of *The Moses Taylor* and *The Hine* ·v. *Trevor,* and says the difference between contract and tort is immaterial, on the point of the exclusiveness of the jurisdiction of the federal courts. If the contract is maritime, and the lien attached to it is a maritime lien, not enforcible by common law remedies, the jurisdiction of the district courts is exclusive of that of any other court, whether state or national.

Very many state courts, as well as district courts, have passed upon the question either directly or indirectly, and all seem to incline in one direction.

This is now the settled policy of the Supreme Court as foreshadowed if not directly asserted, in all its recent decisions where the question is raised. As late as 1874, in the case of *The Lottawanna,* 21 Wall. 580, the doctrine of exclusive jurisdiction in the district courts was affirmed in the most emphatic terms. The court say, "It seems to be settled in our jurisprudence that so long as congress does not interpose to regulate the subject, the rights of material men furnishing necessaries to a vessel in her home port may be regulated in each state by state legislation. State laws, it is true, cannot exclude the contract for furnishing such necessaries from the domain of admiralty jurisdiction, for it is a maritime contract, and they cannot alter the limits of that jurisdiction ; nor can they confer it upon the state courts so as to enable them to proceed *in rem* for the enforcement of liens created by such state laws, for it is exclusively conferred upon the district courts of the United States. They can only authorize the enforcement thereof by common law remedies, or such remedies as are equivalent

thereto.   But the district courts of the United States having
jurisdiction of the contract as a maritime one, may enforce liens
given for its security, even when created by the state laws."

A lien on a sea-going vessel for repairs made upon her is a
recognized admiralty lien.   It is nothing else.   But it is not
known to or enforcible by courts of common law.   This lien
when applied to a domestic vessel has not changed its nature.
All the change there is, is this : It is extended to a class · of
persons not entitled to claim its benefits under the general
maritime law.   And such lien may lawfully be granted by the
laws of a state in favor of material men for furnishing repairs or
materials to a domestic vessel, to be enforced by proceedings *in
rem* in the district courts of the United States, but not in the
courts of the state.   *The Lottawanna,* 21 Wall. 559.   The
authorities which have been cited are sufficient to show the
judicial sentiment upon this question.   It has been followed and
acted upon in several recent cases in the district courts.   *The
Red Wing,* 14 Fed. Rep. 869, decided in 1882 ; *The Howard,*
29 Fed. Rep. 604, decided in 1887 ; *The Alanson Sumner,* 28
Fed. Rep. 670 ; *U. S.* v. *B. & H. County Ferry Co.* 21 Fed.
Rep. 331.

Nor do the authorities deny that such liens may be enforced
by common law remedies or such as are equivalent thereto, in
the state courts.   "But it is not a remedy in the common law
courts which is saved, but a common law remedy ; not such as a
legislature may confer upon a common law court, but such as
the common law itself (in 1789) was competent to give."
*Hayford* v. *Cunningham,* 72 Maine, 133.   "It could not have
been the intention of congress by the exception in that section,
to give the suitor all such remedies as might afterwards be
enacted by state statutes, for this would have enabled the states
to make the jurisdiction of their courts concurrent in all cases,
by simply providing a statutory remedy for all cases."   *The
Hine* v. *Trevor,* 4 Wall. 571.

The proceedings in the case under consideration, as in *Hayford*
v. *Cunningham, supra,* were not a common law remedy, nor
such as the common law was competent to give.   The suit was

against the vessel itself and not against the interest of the owner in it. The characteristic feature of the proceeding is that the vessel proceeded against is itself seized and impleaded as the defendant, which is substantially the proceeding in a court of admiralty in proceedings *in rem*. At common law, proceedings are against persons, and if property is seized or taken it is taken as the property of the person proceeded against, and the purchaser at the sheriff's sale gets only such title or interest as the defendant had. The process is against another as owner of the property, " and not against the property as an offending thing, as in the case where the libel is *in rem* in the admiralty court to enforce a maritime lien in the property." *Leon* v. *Galceran*, 11 Wall. 189; *Johnson* v. *Chicago Elevator Co.* 119 U. S. 397.

The statute, therefore, so far as it authorized proceedings *in rem* in the courts of this state for the enforcement of a lien for labor, materials, or repairs upon a domestic or foreign sea-going vessel, must be held to be in contravention of the constitution and laws of the United States.

The result is that the process under which this defendant attempts to justify was not such as would protect him in seizing the vessel. Sufficient appeared upon its face to show that it was not from a court of competent jurisdiction in reference to the subject matter. The process disclosed upon its face that it was to enforce a lien claim by proceedings *in rem* for repairs upon the vessel against which the charges were made as the specifications annexed to and forming a part of the proceedings plainly show. The process was not only irregular, but absolutely void. Such was the decision in *Campbell* v. *Sherman*, 35 Wis. 103, where it was held that a process *in rem* to enforce a maritime lien issuing from a state court will not protect the officer executing it inasmuch as the state courts have no jurisdiction in such cases. This principle is recognized in *Fisher* v. *McGirr*, 1 Gray, 45, where it is expressly held that if the court has no jurisdiction over the subject matter, the process, though apparently regular, is not merely voidable, but wholly void, and the officer taking property under it has no authority, and is therefore liable to an action of trespass. See also *Cassier* v.

*Fales*, 139 Mass. 462; ·*Elsemore* v. *Longfellow*, 76 Maine, 130–1·. And moreover it is settled that where the law under which the officer acts is "unconstitutional it is void; though having the form, it has not the force of law; the provisions, professing to confer jurisdiction, give no jurisdiction; and the proceedings even of subordinate officers under it cannot be justified." *Warren* v. *Mayor and Aldermen of Charlestown*, 2 Gray, 97; *Norton* v. *Shelby County*, 118 U. S. 442; *Virginia Coupon Cases*, 114 U. S. 271.

The case shows that the plaintiff in this action, at the time when the seizure was made, and at the commencement of this suit, held a mortgage upon the vessel with the right of immediate possession in himself, the time having elapsed in which such right belonged to the mortgagor by the terms of the mortgage. He can therefore maintain this action. *Welch* v. *Whittemore*, 25 Maine, 86; *Holmes* v. *Sprowl*, 31 Maine, 76; *Barrows* v. *Turner*, 50 Maine, 128; *Staples* v. *Smith*, 48 Maine, 470; *Codman* v. *Freeman*, 3 Cush. 306.

The only remaining question is one of damages. And upon this the instructions given to the jury were undoubtedly correct. We have examined this question with considerable care, and are unable to arrive at any other conclusion than that the value of the vessel at the time of the conversion, with interest thereon to the time of verdict, is the true rule of damages in · this case. Such is the general and well settled rule in actions of this nature. This rule applies where the plaintiff is general owner, or is answerable over to others.

But where the defendant, although a wrong doer, has a lien on the property, such amount as may be due on the lien is allowed to be deducted from the value, to avoid circuity of action, in mitigation of damages. *Chamberlin* v. *Shaw*, 18 Pick. 283.

Or, he may show in mitigation that the goods did not belong to the plaintiff and that they have gone to the use or benefit of the owner. *Squire* v. *Hollenbeck* 9 Pick. 552. But in such case it is essential to show that the property has actually gone to the use of the real owner, for although there may be a mere outstanding title in a third person, that would furnish no ground for reduction

of damages to one who has wrongfully taken the property or converted it to his own use. *Case* v. *Babbitt*, 16 Gray, 280; *Lyle* v. *Barker*, 5 Bim. (Pa.) 457; *White* v. *Webb*, 15 Conn. 302; *Cressey* v. *Parks*, 76 Maine, 534; *Pierce* v. *Benjamin*, 14 Pick. 356; *Perry* v. *Chandler*, 2 Cush. 242; *Carpenter* v. *Dresser*, 72 Maine, 380. Or, in reduction, it may be shown that the defendant is entitled to the property after the plaintiff's mortgage has been satisfied. *Spoor* v. *Holland*, 8 Wend. 445; *Ullman* v. *Barnard*, 7 Gray, 558.

But where the plaintiff is responsible over by operation of law or otherwise to a third person; or if for any cause the defendant is not entitled to the balance of the value; then the rule is, that the value of the property should be assessed to the plaintiff. *Chamberlain* v. *Shaw*, 18 Pick. 284; *Green* v. *Farmer*, 4 Burrows, 2214. Or, if the wrong doer is a third person and not the general owner. *White* v. *Allen*, 133 Mass. 424.

In the case of *Ullman* v. *Barnard*, *supra*, the court say: "The measure of damages is the value of the flour, with interest from the time of its conversion. The right of property and possession were both in the plaintiff; and although he had only a special property in the flour, as security for the amount of the drafts, he is entitled to recover its full value. He is answerable over to the general owner." In this case the actual possession was not in the plaintiff, but he had the right of possession.

The case of *Codman* v. *Freeman*, 3 Cush. 314, is very analogous to the question before us. The action was trespass by the mortgagees against an officer for attaching and selling certain personal property. Insolvency proceedings were instituted against the party owing the property and thereby the attachments were dissolved, and the court say that the attaching creditors no longer had any lien by their attachment or other interest in the goods, and that the interest of the officer created by the attachment was divested, and he and the creditors were then strangers. SHAW, C. J., by whom the opinion of the court was delivered, says : "By force of the mortgage, the plaintiffs became owners of the property, as against the mortgagor, with the right of present possession, by a defeasible title, indeed, still by a

title which made them owners until defeated. The sheriff takes them under claim of a right to attach them in behalf of creditors; but that attachment is dissolved, and then the plaintiffs have the same right against the officer, as they would against any other stranger; and, upon recovering damages, they are entitled to the full value." See also *Pomeroy* v. *Smith*, 17 Pick. 86; *Barrows* v. *Turner*, 50 Maine, 129–30; *Carpenter* v. *Dresser*, 72 Maine, 379.

In this case the seizure was without right. The officer was a wrong doer, and upon no principle of law can he claim any mitigation or reduction of damages from the real value of the vessel. The defendant stands in no position to show that he is entitled to the balance of the value, if any, above the plaintiff's mortgage. His position is that of a stranger and wrong doer, and by the well settled principles of law is responsible to this plaintiff for the value of the property.

But notwithstanding the plaintiff is entitled to recover upon the law as appears to have been correctly given, yet we have no doubt from the evidence that a wrong has been done the defendant in the amount of the verdict. The case shows that the mortgagor has surrendered all his interest in the vessel to the plaintiff with no consideration other than that of the original mortgage. Whatever the law may be as applied to other cases, the court in this case will not sustain a verdict for an amount larger than the mortgagee's interest in the vessel, and not even to that extent if the amount is greater than a fair value of the vessel. The schooner was twenty-five years old. Some of the witnesses place its value as low as one thousand dollars. Others place a higher estimate upon it. While the plaintiff may be entitled to a fair compensation, certainly there is nothing in the case by which he should be entitled to any fancy value of the property. The equities of the case are most decidedly against it. The jury must have been influenced by bias or prejudice in returning the amount of their verdict.

The motion for a new trial must be sustained, unless the plaintiff will remit from the amount of the verdict all above one thousand seven hundred dollars. If he shall remit all above that sum, and have such entry made upon the docket

where the action is pending within thirty days from the time notice of decision in this case is received by the clerk, then the motion for a new trial is to be overruled, otherwise to be sustained and a new trial granted.

*Exceptions overruled. Judgment accordingly.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and HASKELL, JJ., concurred.