GLIDE, The. See Case No. 2,159.

GLIDEWELL (LOWENSTEIN v.). See Case No. 8,575.

## Case No. 5,483.

### The GLOBE.

[2 Blatchf. 427;[1] 15 Law Rep. 421.]

Circuit Court, N. D. New York. Oct., 1852.[2]

ADMIRALTY — JURISDICTION — GREAT LAKES—ACT OF FEB. 26, 1845—SERVICE IN PERSONAL ACTIONS—SUITS IN REM—FOREIGN VESSELS—MARITIME LIENS — SUPPLIES AND MATERIALS—PRIORITY.

1. The extension of admiralty jurisdiction to the lakes, by the act of February 26, 1845 (5 Stat. 726), did not take away the concurrent remedy which existed at common law, and which is to be sought in the jurisprudence of the states, and usually in the state courts.

[Cited in The Henrietta, Case No. 6,121.]
[Cited in Randall v. Roche, 30 N. J. Eq. 222.]

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

[2] [Reversing Case No. 5,484.]

2. As a general if not universal rule, in order to bind a defendant, or to confer any rights upon a plaintiff, by force of a judgment in a personal action, the former must be served with notice of the institution of the suit, so that he may have an opportunity to appear and defend.

[Cited in Daily v. Doe, 3 Fed. 918.]

3. But a proceeding in rem forms an exception to the general rule, and binds the res in the absence of any personal notice to the party interested.

[Cited in Kearney v. Kearney (Cal.) 15 Pac. 770.]

4. A foreign vessel was attached by a proceeding in rem, under a law of Ohio, in a court of that state, for repairs made and supplies furnished, and sold upon a judgment duly recovered in pursuance of such attachment: Held, that the judgment was conclusive upon the transfer and disposition of the vessel, in whatever place she might be found, and upon the title to her, by whomsoever it might be questioned, and whether involved directly or collaterally. This was especially so where the owner of the vessel at the time appeared in the suit in the Ohio court, and contested the proceedings throughout.

5. The case of The Chusan [Case No. 2,717] commented on and explained.

6. The rule in respect to maritime liens against vessels for supplies and materials furnished to her master at a foreign port is, that the party first instituting legal proceedings for the purpose of enforcing his claim against the vessel, is entitled to satisfaction out of the proceeds of her sale.

[Cited in The Young Mechanic, Case No. 18,-180; The Pathfinder, Id. 10,797; The William T. Graves, Id. 17,759; The Minnie R. Childs, Id. 9,640; The Frank G. Fowler, 8 Fed. 333; The J. W. Tucker, 20 Fed. 130; The Arcturus, 18 Fed. 744; The Lady Boone, 21 Fed. 733.]

7. The true meaning of a maritime lien is, that it renders the property liable to the claim without a previous judgment or decree of the court sequestering or condemning it or establishing the demand, as at common law, and the action in rem carries it into effect.

8. The appropriation of the property to that end becomes absolute and exclusive on suit brought, unless superseded by some pledge or lien of paramount order.

9. The first action by which the property is seized is entitled to hold it as against all other claims of no higher character.

[Cited in The Edith, Case No. 4,282.]

10. The "lien," so termed, is, in reality, only a privilege to arrest the vessel for the demand, which, of itself, constitutes no incumbrance on the vessel, and becomes such only by virtue of an actual attachment of the same.

11. G. filed a libel in rem in the admiralty in New-York, under the act of February 26, 1845 (5 Stat. 726), against a vessel, to recover for supplies and materials furnished to her in New-York, as a foreign vessel, owned in Michigan. Before the filing of the libel, she had been sold in Ohio upon a judgment recovered in a state court in Ohio, for supplies and materials furnished to her by C. subsequently to the time when G. furnished his supplies and materials. The Ohio judgment was recovered in a proceeding in rem against the vessel by attachment under a law of Ohio, she being then also a foreign vessel, owned in Michigan: Held, that the priority of time in the furnishing of the supplies and materials by G. gave him no paramount lien on the vessel over the lien of C.

[Appeal from the district court of the United States for the Northern district of New York.]

William H. Glenny filed a libel in rem, in the district court, against the steamboat Globe, to recover the sum of $445 49, for supplies and materials furnished to said steamboat at the request of her master, at the port of Buffalo Creek, in the Northern district of New-York, between the 13th day of June, 1848, and the 10th day of September, 1849. The libel was filed on the 11th of May, 1850, under the act of congress of February 26, 1845 (5 Stat. 726), extending the admiralty jurisdiction in certain cases to the lakes, and navigable waters connecting the same. The Globe was a foreign vessel, owned and registered at Detroit, in the state of Michigan, from before the 13th of June, 1848, until after the 31st of December, 1849.

The claimant, in his answer, set up a title to the steamboat, derived under a sale of it by execution upon certain judgments recovered in February, 1850, in the superior court of Cleveland, in the state of Ohio, which sale took place on the 9th of March, 1850. It was claimed that this sale extinguished any lien which the libellant might otherwise have had upon the vessel.

The Ohio judgments were recovered by virtue of a statute of that state, passed February 26th, 1840, entitled "An act providing for the collection of claims against steamboats and other water-craft, and authorizing proceedings against the same by name," and of an act explanatory thereof, passed February 24th, 1848. These acts provided, that steamboats and other water-craft navigating the waters within or bordering upon the state, should be liable for debts contracted on account thereof by the master, owner, steward, consignee or other agent, for materials, supplies or labor in the building, repairing, furnishing or equipping the same; that any person having such demand might proceed against the owner or owners, or master of such craft, or against the craft itself; that, when suit should be commenced against the craft, the plaintiff should file his precipe to that effect, naming the craft or giving a substantial description of her, and with it a bill of the particulars of his demand, verified by affidavit; that, thereupon, the clerk should issue a warrant, returnable as other writs, directing the seizure of the craft and the detention of the same until discharged by due course of law; that the master, owner, steward, consignee, or other agent of the craft, might discharge her on giving security that she should be forthcoming to answer the judgment under the seizure; that, on the return of the writ, proceedings should be had as in other cases of process served and returned; that, after judgment, the vessel might be sold upon execution to satisfy the judgment, and the overplus, if any, should be paid over to the owner, master or agent, as in other cases of execution; and that an appeal, as in other cases, might be taken from any judgment rendered against the vessel.

The Globe was seized and sold in Ohio in the due course of proceedings against her under these statutes, for debts contracted on her account for repairs made and materials, supplies, &c., furnished to her between the 20th of September, 1849, and the 31st of December, 1849. She was purchased at the sale by one Elisha T. Sterling, the highest bidder, for the sum of $14,000, on the 9th of March, 1850, and, on the 26th of April, 1850, the claimant purchased her from Sterling for the sum of $17,000.

The above facts, with such others as are stated in the opinion of this court, are all that are necessary to an understanding of the case, in the view taken of it by the court.

The district court pronounced for the libellant [Case No. 5,484], and the defendant appealed to this court.

Isaiah T. Williams, for libellant.

William H. Greene and Solomon G. Haven, for claimant.

NELSON, Circuit Justice. The extension of admiralty jurisdiction to the lakes by the act of congress of February 26, 1845 (5 Stat. 726), did not take away the concurrent remedy that existed at common law. Indeed, that act saves, in express terms, this concurrent remedy, where it is competent, and also any concurrent remedy which may be given by the state laws. It was also saved by the general act of 1789, conferring exclusive admiralty jurisdiction upon the district courts of the United States. 1 Stat. 76, 77, § 9; New-Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 344, 389, 390.

The remedy at common law is to be sought in the jurisprudence of the states, and usually in the courts of the states. It may be administered in the federal courts in cases where the citizenship or residence of the parties enables those courts to entertain the jurisdiction. Act Sept. 24, 1789 (1 Stat. 78, 79, § 11). The modes of proceeding in pursuing this remedy are different in the different states, as it respects both the commencement of the suit and the steps taken in conducting it. Undoubtedly, as a general if not universal rule, in order to bind the defendant, or to confer any rights upon the plaintiff, by force of the judgment, in any personal action, the former must be served with notice of the institution of the suit, so that he may have an opportunity to appear and defend. But a proceeding in rem forms an exception to the general rule, and binds the res in the absence of any personal notice to the party interested. Story, Confl. Laws, c. 14, § 549, and cases cited, and chapter 15, §§ 592, 593; Boswell's Lessee v. Otis, 9 How. [50 U. S.] 336.

There can be no doubt, therefore, that the judgments in this case, acting in rem, must be held conclusive upon the transfer and disposition of the vessel in question, in whatever place she may be found, and upon the title to her, by whomsoever it may be questioned, and whether involved directly or collaterally.

The case of The Chusan [Case No. 2,717], which was referred to upon the argument, contains nothing in conflict with these views. That was the case of a libel in Massachusetts, for materials furnished in the port of New York to a foreign vessel; and one of the grounds of defence was, that the statute of New York respecting the lien of a material-man, provided that the lien should cease when the vessel left the state. This ground of defence was overruled by Mr. Justice Story, for the reason that, in the case of a foreign vessel, the lien attached by force of the maritime law, which entitled the party to come into a court of admiralty to enforce it, and that the jurisdiction of the admiralty, thus acquired, could not be taken away or controlled by the state law. This is very clear. As it respects foreign vessels, the jurisdiction of the admiralty is not dependent upon the state law, but upon the law of the seas. No matter what may be the regulations of the state on the subject, as regards the jurisdiction of her own courts, they cannot affect that of the admiralty; and any state law which should attempt to control the admiralty jurisdiction would be unconstitutional and void.

The question, what would be the effect of any concurrent remedy given by the state law, when it should be enforced against the vessel by a court of the state, was not involved in the case of The Chusan [supra], nor was it examined by Judge Story. The only remark made by him in that case, from which an inference could be drawn in conflict with the views I have expressed in this case, is, that the statute of New-York would be unconstitutional if applied to foreign vessels. But that remark was made in answer to the argument that the statute controlled the jurisdiction of the admiralty; and, in that view, the statute would have been unconstitutional.

It may be remarked, however, that it is unnecessary to place the decision of this branch of the case upon the ground that the Ohio judgments, acting in rem, would be conclusive in the absence of any personal notice to the party interested, because Robinson, the owner of the vessel at the time. appeared in the suits in the court in Ohio, and contested the proceedings throughout.

These views dispose of the case, so far as the claims of the libellant upon the vessel are concerned, unless the fact that his supplies and materials were furnished to her prior to the time when the repairs were made and the materials furnished to her by the Ohio creditors, gives him a lien which, in judgment of law, overreaches the proceedings and judgments in the Ohio court, and which he is entitled to enforce in the admiralty.

It has been argued, that this maritime lien against a vessel, for supplies and materials furnished to her master at a foreign port, is an abiding lien, and adheres to the vessel, and may be enforced over all claims of a like nature subsequently accruing in the course of her employment. I cannot assent to this position. On the contrary, I am satisfied that the true rule upon the subject is that, in respect to maritime liens of this description, the party first instituting legal proceedings, for the purpose of enforcing his claim against the vessel, is entitled to satisfaction out of the proceeds of her sale. Upon any other view, the vessel would afford no reasonable security to the merchant in making advances or furnishing the necessary supplies; as, for aught he could know, the existing claims against her might exceed her value. It is apparent that, to give to this maritime lien the efficacy claimed, would greatly embarrass and obstruct the commerce and navigation of the country. It would deprive the master, in distant ports, of the means of meeting the exigencies of the service, because the vessel would furnish no adequate security for the necessary supplies or repairs.

The question has been the subject of examination by the learned district judge for the Southern district of New York. In a case which came before him in 1841, he held that the true meaning of a maritime lien was, that it rendered the property liable to the claim without a previous judgment, or decree of the court, sequestering or condemning it, or establishing the demand, as at common law, and that the action in rem carried it into effect; that the appropriation of the property to that end became absolute and exclusive on suit brought, unless superseded by some pledge or lien of paramount order; that it resulted from the nature of the right and the proceedings to enforce it, that the first action by which the property was seized was entitled to hold it as against all other claims of no higher character; that the lien, so termed, was, in reality, only a privilege to arrest the vessel for the demand, which, of itself, constituted no incumbrance on the vessel, and became such only by virtue of an actual attachment of the same.[3]

I concur fully in this view, and, therefore, hold, in this case, that the priority of time in the furnishing of the supplies and materials by the libellant gave him no paramount lien on the vessel over the liens of the creditors in the Ohio suits.

The error of the learned judge below consisted, I think, in holding (1) that the proceedings and judgments in the Ohio courts were void on account of the absence of notice to the party interested; and (2) that the lien of the libellant for the supplies and materials furnished by him to the vessel was paramount and overreached the judgments and sale under the laws of Ohio.

The decree of the district court must, therefore, be reversed, and a decree be entered dismissing the libel, with costs.

[3] The case referred to is that of The Triumph, in the district court for the Southern district of New York, July 27, 1841 [Case No. 14,182].