Argued June 22, reversed and remanded October 4, rehearing denied
    December 6, 1921, rehearing denied January 3, objections to
    cost bill denied January 17, 1922.

# CORDREY *v.* STEAMSHIP "BEE."

### (201 Pac. 202.)

**Admiralty—No Jurisdiction of Proceeding to Recover Damages for
    Injuries Received on Dock.**

1.    Admiralty courts have no jurisdiction of an action by a long-
shoreman, injured on a dock when a sling loaded with cement fell
on a truck which he was operating, under Const. U. S., Article III,
Section 2, and Judicial Code U. S. Section 24, as amended by Act
Cong. Oct. 6, 1917 (U. S. Comp. Stats. 1918, U. S. Comp. Stats. Ann.
Supp. 1919, § 991[3]).

**Shipping—State can Apply Lien Against Foreign Ship Arising Out
    of Tort in Jurisdiction.**

2.    The state can provide a remedy for a tort happening within
its jurisdiction and apply a lien against a foreign vessel through
whose fault damages occurred, under Const. U. S., Article III, Sec-
tion 2, and Judicial Code U. S., Section 24, as amended by Act
Cong. Oct. 6, 1917 (U. S. Comp. Stats. 1918, U. S. Comp. Stats. Ann.
Supp. 1919, § 991[3]), and hence could properly enact Sections
10281, 10283–10288, 10291, Or. L.

**Constitutional Law—Seizure of Vessel Sufficient Notice to Owner of
    Claim Under Due Process Clause of Constitution.**

3.    Sections 10281, 10283–10288, 10291, Or. L., providing for action
direct against vessel on claims arising out of torts committed by a
vessel, *held* to provide sufficient notice to the owner of the vessel, as
against an objection that it denies due process of law, in view of
Section 799, subdivision 4; amount of notice being a legislative
question.

**Commerce—Statute Providing for Seizure of Vessel in Jurisdiction
    Does not Usurp Federal Function.**

4.    Sections 10281, 10283–10288, 10291, Or. L., providing for a lien
against and seizure of a vessel within the jurisdiction of the state,
to satisfy claims for damages or injuries done to persons or prop-
erty, are not unconstitutional as usurping a federal function in the
regulation of interstate commerce.

**Action—Remedy for Foreclosure of Lien on Property Exclusive.**

5.    The remedy in equity devised by Section 422, Or. L., treating
of foreclosure of liens upon real or personal property, is exclusive
and must be followed.

**Statutes—Later Enactment Supersedes Prior Conflicting Act.**

6.    A later enactment supersedes a prior act, where they are in
conflict.

Shipping—Court Erred in Permitting Action at Law Against Owner of Vessel for Damages Arising Out of Tort.

7.  In a proceeding under Sections 10281, 10283–10288, 10291, Or. L., to recover damages for injuries arising through fault of foreign vessel, court erred in permitting the action to be tried as one at law, and in permitting a personal judgment against the owner, is view of section 422.

Pleading—Language Controls Figures.

8.  Where writing in complaint alleged damages in the sum of $2,800 but the numerical figures were scratched out and the figures $7,500 inserted, the writing controlled.

Pleading—Amendment as to Amount After Case was Submitted Improperly allowed.

9.  Where a complaint alleged damages in writing of $2,899, but the figures were stricken out and $7,500 inserted, court erred, after the testimony had been taken and the cause argued to the jury, in permitting the complaint to be amended so as to conform the written allegation to the figures, in view of Section 102, Or. L., especially where the proceeding was against a citizen of another state, and the amendment in effect sanctioned a practice whereby defendant could be haled into court to answer a claim not of sufficient amount to give the federal court jurisdiction, and his right of removal be cut off.

Shipping—Whether Owner of Vessel Knew of Defective Sling Held for Jury.

10.  In an action by a longshoreman for damages for personal injuries caused by breaking of sling, the fact that the sling was furnished from aboard the vessel sought to be held for the damages was a circumstance which gave the jury a right to determine whether or not owner of vessel had knowledge of the defect.

Shipping—Injury to Longshoreman from Breaking of Sling Furnished by Ship Held to Create Lien.

11.  Where injuries to a longshoreman arose out of the furnishing of a defective sling by a vessel discharging its cargo, the tort, if any, was one committed by the ship itself under Sections 10281, 10283–10288, 10291, Or. L., providing for a lien against a vessel causing the injury.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 2.

While on the dock at which the steamship "Bee" was berthed in Portland in this state and was discharging her cargo of cement, the plaintiff, a stevedore, was hurt by a sling-load of cement which fell

on the truck he was operating, so that it threw him on the dock and injured him. The home port of the ship was in the State of California and it was owned by a corporation of that state. The plaintiff had judgment *in personam* against the owner of the vessel, from which that owner appeals. The further facts appear in the opinion.

REVERSED AND REMANDED. REHEARING DENIED.

For appellant there was a brief over the names of *Messrs. McCutchen, Willard, Mannon & Greene* and *Messrs. McCamant, Bronaugh & Thompson,* with an oral argument by *Mr. Wallace McCamant.*

For respondent there was a brief over the names of *Mr. William P. Lord* and *Mr. A. I. Moulton,* with an oral argument by *Mr. Lord.*

BURNETT, C. J.—We deduce from the bill of exceptions substantially this state of facts: The vessel in question had arrived in Portland with a cargo of cement consigned to local parties. The consignee or someone operating for him on the land telephoned to the longshoremen's union for a number of stevedores to assist in unloading the cargo. Several men, including the plaintiff, were sent by the union to the dock. On arriving there someone acting as mate of the vessel directed the plaintiff with others to remain on the dock for service there while the rest were taken into the hold of the vessel. The plaintiff took an ordinary hand-truck and was engaged in receiving from the sling of the vessel truck-loads of cement. The ship's tackle by means of pulleys and ropes took a number of sacks of cement in a sling from the hold of the vessel, hoisted it up and swung

it out over the dock, lowering it upon the trucks. While the plaintiff was waiting to receive a load in this manner, the sling broke before the load reached the dock, and the sacks of cement falling upon the truck threw the plaintiff over upon his back, by which he suffered the injuries complained of.

Section 10281, Or. L., provides that:

"Every boat or vessel navigating the water of this state or constructed in this state shall be liable and subject to a lien * * for damages or injuries done to persons or property by such boat or vessel. * * "

After providing for the priority of liens, the statute in Section 10283 declares that:

"Any person having a demand as aforesaid, instead of proceeding for the recovery thereof against the master, owner, agent, or consignee of the boat or vessel, may, at his option, commence an action against such boat or vessel by name."

We find this in Section 10284:

"Any person wishing to commence an action against a boat or vessel shall file his complaint against such boat or vessel by name with the clerk of the Circuit Court of the county in which such boat or vessel may lie or be. The complaint shall set forth the plaintiff's demand in all its particuars, and on whose account the same accrued, and shall be verified by the plaintiff or some credible person for him."

Section 10285 states:

"Whenever such complaint shall be filed, the clerk shall issue a warrant thereon, commanding the sheriff to seize the boat or vessel mentioned in the complaint, with her tackle, apparel, and furniture, and retain the same until discharged from such custody by due course of law."

Section 10286 is as follows:

"Upon the return of any warrant issued as prescribed in the last section, proceeding shall be had in the Circuit Court against the boat or vessel seized, in the same manner as if the action had been commenced against the person on whose account the demand accrued."

In Section 10287 it is said:

"The master, owner, agent, or consignee of the boat or vessel may appear on behalf of such boat or vessel and answer the complaint."

Section 10288 provides that:

"If in any action commenced under the provisions of this chapter the master, owner, agent or consignee shall not appear and answer the complaint, the plaintiff may proceed to take judgment in the same manner and under the same restrictions as in a civil action against a natural person; if an issue of fact be joined, the same proceeding shall be had as in other actions."

There are other sections which provide for filing an undertaking or making a deposit in lieu thereof, for the discharge of the boat. The judgment prescribed in Section 10291 is to the effect that if judgment be rendered against the boat or vessel, the court shall make an order directed to the sheriff commanding him to sell the same for the satisfaction of the judgment.

The owner of the vessel, the Bee Steamship Company, appeared as claimant, traversed most of the complaint, denied the jurisdiction of the court over the controversy or over the steamship, and averred that the accident happened on account of the negligence of the plaintiff himself; that he assumed the risks of the employment of which the liability to the injury complained of was one; that at the time of

the accident and for a long time prior thereto the steamship had been engaged in interstate commerce, and was discharging a cargo which had been transported on the vessel from the State of California to the State of Oregon when the accident occurred. It is also said as a further affirmative defense that the plaintiff was employed by the Oregon Portland Cement Company, an Oregon corporation which was in actual possession of the dock upon which the cargo was being stored; and that the injury of the plaintiff was sustained while he was working for the Oregon Portland Cement Company, with the conclusion that the accident was to be governed only by what is known as the industrial accident law.

That portion of the answer averring contributory negligence is denied. The answer which sets up averments of risk is traversed as to the allegation of the foreign status of the claimant and its ownership of the "Bee" as well as to the averments that the plaintiff was an experienced man and informed of all of the incidents of the work and of the risks and dangers attached thereto. Otherwise, the new matter in the answer is not denied.

The principal effort of the claimant and owner of the vessel is to establish its contention that the state courts have no jurisdiction of the subject matter of the litigation. It maintains that only the federal courts of admiralty have any authority over the grievance complained of. It is true that under Section 2 of Article III of the United States Constitution it is said that:

"The judicial power shall extend to all cases in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which
102 Or.—41

shall be made, under their authority, * * and to all cases of admiralty and maritime jurisdiction."

Federal legislation in pursuance of this provides that the District Courts shall have original jurisdiction of all suits of a civil nature at common law or in equity where the matter in controversy exceeds, exclusive of interest and costs, the sum and value of three thousand dollars, and arises under the laws or Constitution of the United States and treaties which are made or shall be made under their authority, or is between citizens of different states, and in all civil causes of admiralty or maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it: Section 24 of the Judicial Code of the United States. A later amendment enacted October 6, 1917, by Congress, adds to the saving clause as follows: " * * and to claimants the rights and remedies of the workmen's compensation law of any state." In this branch of the case, therefore, the crucial question is whether the grievance complained of is of admiralty cognizance, or whether it belongs to the state courts. In *Philadelphia etc. R. R. Co.* v. *Philadelphia, Havre de Grace etc. Co.*, 23 How. 209 (16 L. Ed. 433), it is said:

"The jurisdiction of courts of admiralty in matters of contract depends upon the nature and character of the contract, but in torts it depends entirely on locality."

It is taught in *The J. E. Rumbell*, 148 U. S. 1 (37 L. Ed. 345, 13 Sup. Ct. Rep. 498, see, also, Rose's U. S. Notes), that the federal maritime jurisdiction is exclusive; that state legislation cannot bring

within admiralty jurisdiction, a subject not maritime in its nature,

"but when a right maritime in its nature and to be enforced by process in the nature of admiralty process, has been given by the statute of a state, the admiralty courts of the United States have jurisdiction and exclusive jurisdiction to enforce that right according to their own rules of procedure."

We learn from *The Willapa,* 25 Or. 71, 74 (34 Pac. 689), that state laws cannot confer admiralty jurisdiction upon the state courts so as to enable them to proceed *in rem* for the enforcement of liens created by such laws, for it is exclusively conferred upon the District Courts of the United States. The case of *The Moses Taylor,* 4 Wall. 411 (18 L. Ed. 397), was founded on a breach of a maritime contract, and the court held that the statute of the State of California, almost precisely in terms like our own, authorizing an action against the steamer by name, established a proceeding in the nature and with all the incidents of a suit in admiralty. It was decided there that this was without the scope of state legislative power. In *The Chusan,* 2 Story, 455 (5 Fed. Cas. 680), and *The Roanoke,* 189 U. S. 185, 194 (47 L. Ed. 770, 23 Sup. Ct. Rep. 491), both cited in the defendant's brief, the question involved was that of furnishing materials for repairs of a vessel lying in a foreign port. This, of course, under the authorities, carries a lien, according to the general maritime law, in favor of the parties furnishing the materials.

In all of the cases cited by the defendant in support of its contention that the state has no authority to impress a lien upon the defendant's steamship, there appears the element either of maritime tort or mari-

time contract. For instance, in *Southern Pacific Co. v. Jensen,* 244 U. S. 205 (Ann. Cas. 1917E, 900, L. R. A 1918C, 451, 61 L. Ed. 1086, 37 Sup. Ct. Rep. 524), the cause of action was for an injury aboard the ship. In *The Rockaway,* 156 Fed. 692, it was held that a state statute may create a lien on a domestic vessel for repairs at the home port, and that this would be enforceable in admiralty because the nature of the contract was maritime. The same reason applies in *American Co.* v. *Fletcher Co.,* 173 Fed. 471 (97 C. C. A. 477), to the effect that supplies and repairs to foreign vessels are lienable by the general maritime law, while the same services rendered to a domestic vessel are made lienable only by state statutes; but because of their maritime nature, when such liens are given they are enforceable only in the admiralty courts. In *The Athinai,* 230 Fed. 1017, it is said that it is beyond the power of any state to create a lien enforceable·in the admiralty by process *in rem* against a foreign ship, claims against foreign vessels being within the exclusive jurisdiction of admiralty. The point of that case is, that state courts can neither increase nor diminish the jurisdiction of admiralty. To say that the state courts cannot create a lien enforceable in the courts of admiralty is but another way of declaring that the state can neither enlarge nor restrict the authority of the admiralty courts. The reason for the opinion in that case is thus stated:

"Any such legislation, creative of a lien enforceable in admiralty, and upon shipping, must rest upon the making or implication of a contract maritime in its nature, or on the commission of a maritime tort."

It is enunciated in *Corsica Co.* v. *W. S. Moore Co.,* 253 Fed. 689 (165 C. C. A. 283), as follows:

"To sustain a state statute giving a lien on a vessel, the cause of the action must be maritime in nature and a breach of an executory contract for the charter of a vessel is not maritime in nature and therefore cannot be enforced by a proceeding *in rem* in an admiralty court."

So also in *The Minnie R. Childs,* 10 Ben. 553 (17 Fed. Cas. 452), a lien for supplies to domestic ships created by state law is maritime and hence cognizable in admiralty. We find in *Warren* v. *Kelley,* 80 Me. 512 (15 Atl. 49), that the statute of a state may create a lien on a domestic vessel based on maritime service, but the jurisdiction to foreclose it belongs to the United States courts. Likewise, *Weston* v. *Morse,* 40 Wis. 455, teaches us that a case for sailors' wages and supplies furnished to a domestic vessel made lienable by a state statute is enforceable only in admiralty for the basic reason that they are for incidents maritime in their nature. In *Chelentis* v. *Luckenbach Co.,* 247 U. S. 372 (62 L. Ed. 1171, 38 Sup. Ct. 501), a sailor aboard ship on the high seas while at work on the deck was caught by a wave which came aboard and threw him against the vessel, breaking his leg. He sued the owners of the vessel for common-law damages, but the court held that under the maritime law, the case being one of maritime tort, the liability of the boat or its owners could not be extended beyond the measure allowed by the maritime jurisdiction. In *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149 (11 A. L. R. 1145, 64 L. Ed. 834, 40 Sup. Ct. Rep. 834), Stewart was doing maritime work on a barge for the Knickerbocker Ice Company while the barge lay in navigable waters. While so engaged he fell into the Hudson River and was drowned. It was there held that the clause saving

to claimants the rights and remedies under the state Workmen's Compensation Act was an attempt by Congress to delegate its legislative power to states and that on the other hand the state could neither add to nor take from admiralty jurisdiction. Thus we find without variation that the *sine qua non* of admiralty jurisdiction is that the contract involved must be maritime in its nature, dependent upon the nature of the contract, or that the tort in question must be a maritime tort dependent upon the locality where the injury was received.

1. Bearing in mind, therefore, that the injury received by the plaintiff and upon which this proceeding is based happened to him while he was on the land, and that for all that appears in the record he never was aboard the steamship "Bee," we find the rule to be thus:

"Suits for injuries to a person sustained on land although originating or caused by a vessel are not cognizable in admiralty": 1 C. J. 1286.

In *Ryley* v. *Philadelphia R. R. Co.,* 173 Fed. 839, the decedent was injured on a barge navigating the Delaware River, but died ashore. It was held that admiralty had no jurisdiction, because the injury was not fully consummated in navigable water. *The Albion,* 123 Fed. 189, was a case where the libelant walked off the dock at night, under the impression that a gang-plank was there. But it had been removed, and hence he fell. It was held that admiralty jurisdiction extends only to torts committed on navigable waters. We find in *Price* v. *Belle of The Coast,* 66 Fed. 62, that the libelant was helping to carry a heavy barrel of oil off the vessel and fell into a hole after leaving the ship, and it was there decided that because the injury was received ashore admiralty

had no jurisdiction. In *The Mary Garrett,* 63 Fed. 1009, the libelant, a seaman employed on the ship, was hurt on the dock while discharging freight, making the instance, according to the decision, not within admiralty jurisdiction. A seaman who deserted the ship claimed damages for arrest on land, and it was said in the opinion in *Bain* v. *Sandusky Co.,* 60 Fed. 912, that:

"Jurisdiction over torts in admiralty is clearly limited to maritime torts, and the torts must be committed on water and not on land."

A similar instance is treated in *The H. S. Pickands,* 42 Fed. 239. Access to the steamer was gained by a ladder, about twelve feet in length, leading from the wharf to the bulwarks of the vessel, the foot of which ladder had been secured by a cleat on the dock which prevented its slipping. The libelant was employed in doing some work in repairing the boiler of the vessel. Having occasion to leave the ship, he went to the ladder, but in the meantime it had been moved away from the cleat, leaving the foot of the ladder insecure. While he was on the ladder in the act of leaving the vessel, the ladder slipped and he fell to the wharf, receiving an injury; and it is said in the opinion that to give admiralty jurisdiction, the injury must have been consummated, and the damage received, upon the water. "The mere fact that the wrongful act was done upon a ship is insufficient." *The Mary Stewart,* 10 Fed. 137, is a case almost precisely like the one in hand. There, the libelant was on the dock in the employ of the stevedore who was loading the ship with cotton bales by aid of the ship's tackle. Owing to the breaking of the ship's rope, a bale being hoisted aboard fell on the libelant

on the dock and injured him.    The rule was thus laid down:

"Not only the wrong must originate on water, but the damage must also happen on water."

The deduction is, that a state statute cannot confer jurisdiction on admiralty courts except for matters maritime in their nature.    Another similar case is that of *Keator* v. *Rock Plaster Mfg. Co.*, 256 Fed. 574, where a vessel was unloading rock from its hold. The bucket containing a load of rock spilled its contents on a workman standing on the dock and it was decided that the matter was not of maritime cognizance. See also *Smalls* v. *Atlantic Coast Shipping Co.*, 261 Fed. 928.    In *Billings* v. *Breinig*, 45 Mich. 65 (7 N. W. 722), a ferryman was ashore in the act of lowering his ferry cable to permit the passage of a vessel when a ship navigating the stream struck the cable so that it killed the ferryman, and it was determined that this did not furnish a chose in action for admiralty jurisdiction.    One of the early cases is that of *The Plymouth*, 3 Wall. 20 (18 L. Ed. 125).    By the negligence of its crew aboard the vessel while moored to the dock, the ship took fire, which spread to and consumed    some    warehouses    and    their    contents, located on the dock; and it was held that this was not within admiralty jurisdiction.    The same doctrine is taught in *Ex parte Phoenix Ins. Co.*, 118 U. S. 110 (30 L. Ed. 274, 7 Sup. Ct. Rep. 25).    These precedents are conclusive that the mishap involved in the present controversy is not maritime in its nature and is beyond the jurisdiction of the federal courts.    There is, therefore, no ground for saying that the admiralty courts have anything to do with the grievance here in question.

2. The investigation consequently takes this form: Can the state provide a remedy for a tort happening within its jurisdiction, and apply a lien against foreign property involved in the commission of that tort? In *The Robert W. Parsons,* 191 U. S. 17 (48 L. Ed. 73, 24 Sup. Ct. Rep. 8), a case cited for the defendant, we find this language:

"It is equally well established that for causes of action not cognizable in admiralty, either *in rem* or *in personam,* the states may not only grant liens, but may provide remedies for their enforcement."

In *Missouri* v. *Lewis,* 101 U. S. 22, 31 (25 L. Ed. 989) it is said:

"There is nothing in the Constitution to prevent any state from adopting any system of laws or judicature it sees fit for all or any part of its territory."

We learn from *Ex parte Reggel,* 114 U. S. 642, 651 (29 L. Ed. 250, 5 Sup. Ct. Rep. 1148):

"That commonwealth [Pennsylvania] has the right to establish the forms of pleadings and process to be observed in her own courts in both civil and criminal cases subject only to those provisions of the Constitution of the United States involving the protection of life, liberty and property in all the states of the union."

Again, in *Iowa Central Ry. Co.* v. *Iowa,* 160 U. S. 389, 393 (40 L. Ed. 467, 16 Sup. Ct. Rep. 344), it is said:

"The fourteenth amendment in no way undertakes to control the power of a state to determine by what process legal rights may be asserted or legal obligations may be enforced, provided the method of procedure adopted for these purposes gives reasonable notice and affords fair opportunity to be heard before the issues are decided."

In *Brown* v. *New Jersey*, 175 U. S. 172, 175 (44 L. Ed. 119, 20 Sup. Ct. Rep. 77), we find this language:

"The state has full control over the procedure in its courts, both in civil and criminal cases, subject only to the qualification that such procedure must not work a denial of fundamental rights or conflict with specific and applicable provisions of the federal Constitution. * * The state is not tied down by any provisions of the federal Constitution to the practice and procedure which existed at the common law. Subject to the limitations heretofore named it may avail itself of the wisdom gathered by the experience of the century to make such changes as may be necessary."

See, also, *League* v. *Texas,* 184 U. S. 156, 158 (46 L. Ed. 478, 22 Sup. Ct. Rep. 475).

3. Recalling the terms of the statute under consideration, we note that there is no provision explicitly requiring service of summons or notice of the pendency of the proceeding upon the owner of the vessel against which the process has been issued. Upon filing a statement of the plaintiff's claim, the clerk, a ministerial officer, issues a warrant empowering the sheriff, so to speak, to arrest the vessel. Indeed, it is provided that "the master, owner, agent, or consignee of the boat or vessel may appear on behalf of such boat or vessel and answer the complaint." True enough, they have the privilege of answering, but on what compulsion must they? Is this due process of law? Does the owner have his day in court by virtue of the statute? The question is not without difficulty, but there is abundant authority in the precedents for saying that the seizure of one's property is notice to him of an invasion of his rights, calling upon him to defend. We are not concerned about the amount of notice, for that is for the legis-

lature to determine. The question is whether or not it has ordained notice. In *Keating* v. *Spink*, 3 Ohio St. 105 (62 Am. Dec. 214), the court had under consideration a statute almost in the same terms as our own; and speaking by Mr. Justice RANNEY, it said:

"This statute, then, as stated by the court in the *Canal Boat Huron* v. *Simmons*, 11 Ohio, 458, 'treats the boat as a person, and makes it responsible in its own name for all debts contracted for its use, and for all injuries committed against persons or property on board, by her officers or crew.' The liability is upon the craft—the proceeding is against the craft—and the judgment operates alone upon the craft. Its seizure is indispensable to the jurisdiction of the court, and its continued custody, unless released upon bond and security, indispensably necessary to the further proceedings, after final judgment.

"The proceeding, therefore, is strictly and technically *in rem;* it is pursued, without reference to the owner, to enforce a liability which the thing itself has incurred, and the thing itself is condemned to make reparation. Possession is the essential element upon which the jurisdiction of the court depends; and as this possession is deemed that of the sovereignty under whose authority the court sits, if any question can be regarded as settled by the unanimous opinion of courts and jurists it is this, that 'the law regards the seizure of the thing as constructive notice to the whole world': *Hollingsworth* v. *Barbour,* 4 Pet. 475 (7 L. Ed. 926). Other means for giving notice may be provided at the discretion of the sovereign power, upon the observance of which the jurisdiction may or may not depend; but where they are not prescribed, the power of the court over the thing, when taken into the custody of the law, is perfect and complete, and the final disposition of it binding upon the world. As the subjects of liability and seizure, described in this statute, are so uniformly attended by the owner or master representing

all interests, the legislature has regarded the seizure and taking the thing into custody as effectual notice to those interested of the pendency of the proceedings, and has therefore provided for no other."

In *The Mary,* 9 Cranch, 126, 144 (3 L. Ed. 678), Chief Justice MARSHALL delivered the opinion, and among other things said:

"It is a principle of natural justice, of universal obligation, that before the rights of an individual be bound by a judicial sentence, he shall have notice, either actual or implied, of the proceedings against him. Where these proceedings are against the person, notice is served personally, or by publication; where they are *in rem,* notice is served upon the thing itself. This is necessarily notice to all those who have any interest in the thing, and is reasonable, because it is necessary, and because it is the part of common prudence for all those who have any interest in it, to guard that interest by persons who are in a situation to protect it. Every person, therefore, who could assert any title to 'The Mary,' has constructive notice of her seizure, and may fairly be considered as a party to the libel."

In the celebrated case of *Pennoyer* v. *Neff,* 95 U. S. 714, 727 (24 L. Ed. 565), the court said:

"The law assumes that property is always in the possession of its owner, in person or by agent; and it proceeds upon the theory that its seizure will inform him, not only that it is taken into the custody of the court, but that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale. Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the state, or of some interest therein, by enforcing a contract or a lien respecting the same, or to partition it among different owners, or, when the public is a party, to condemn and appropriate it for a public purpose.

In other words, such service may answer in all actions which are substantially proceedings *in rem*. But where the entire object of the action is to determine the personal rights and obligations of the defendants, that is, where the suit is merely *in personam*, constructive service in this form upon a nonresident is ineffectual for any purpose.''

*The Ann*, 5 Hughes, 292 (8 Fed. 923), was a case dependent upon the seizure of a vessel. The court there said:

"It is true that there was no notice by service, or publication of notice, to the owner or holders of maritime or other liens, that the vessel was being proceeded against; but a proceeding *in rem* forms an exception to the general rule of notice, particularly when based upon actual manucaption of the thing which is the instrument of the wrong, and in such cases the seizure has been held to be constructive notice to everyone having any interest in the thing seized.''

The reason for the sufficiency of notice arising from the mere seizure of the property may be found in part, at least, in the presumption "that a person takes ordinary care of his own concerns'': Or. L., § 799, subd. 4. In the case of a seagoing vessel especially, which is constantly in charge of a master or other representative of the owner, or of the owner himself, the mere taking is such an invasion of property rights as to notify the owner as a practical matter, that he must defend. While a foreign vessel is in the state and its owners are without the jurisdiction and likely unknown, it is clearly in the power of the state, by virtue of its authority over property within its boundaries, to devise a process to subject the offending vessel itself to the payment of damages for a tort committed with it as an instrument. Of

course, as taught in the excerpt from *Pennoyer* v. *Neff, supra,* the remedy is limited to the *res* itself and cannot result in a judgment *in personam.* We arrive at the conclusion, therefore, that, having authority over the property within its jurisdiction, and the matter not being cognizable in the federal courts of admiralty, the state has authority to formulate a process whereby the offending property itself may be proceeded against, seized and subjected to the redress of the wrong committed. Seizure itself is notice, the quantity of which is for the legislative power to determine: *The Globe,* 2 Blatchf. 427 (10 Fed. Cas. No. 5483); *Bradstreet* v. *Neptune Ins. Co.,* 3 Sumn. 609 (Fed. Cas. No. 1793); *Leigh* v. *Green,* 193 U. S. 79 (48 L. Ed. 623, 24 Sup. Ct. Rep. 390); *Freeman* v. *Alderson,* 119 U. S. 185 (30 L. Ed. 372, 7 Sup. Ct. Rep. 165); *Bierne* v. *Steamboat Triumph,* 2 Ala. 738; *Ridley* v. *Ridley,* 24 Miss. 648; *Stewart* v. *Hinds County Police,* 25 Miss. 479; *Calhoun* v. *Ware,* 34 Miss. 146; *New Orleans etc. Ry. Co.* v. *Clements,* 35 Miss. 17; *Kwilecki* v. *Holman,* 258 Mo. 624 (167 S. W. 989); *Beech* v. *Abbott,* 6 Vt. 586; *Luther* v. *Fowler,* 1 Grant Cas. (Pa.) 176.

4. It is fallacious to assume, as the claimant does, that the statute upon which this litigation is based is unconstitutional in that it attempts to usurp a federal function in the regulation of interstate commerce, at least so far as it may be applied to foreign ships. It is not reasonable to say that a vessel of a sister state may come within the boundaries of this state and injure the persons or property of our citizens and that they are without redress for a non-maritime tort merely because such ship is carrying goods hither from another state. The interstate commerce legislation does not countenance or author-

ize the commission of land torts by any vessel whether domestic or foreign. Hence our statute, giving a remedy for such grievances, does not infringe upon that federal function.

Thus far we have a chose in action not included in admiralty cognizance, for which the state has fashioned a proceeding *in rem,* notice of which depends upon the seizure of the offending thing, the vessel. What, then, of the method of trial? We note that the statute provides only for a lien and for a sale of the property seized. The original statute was enacted in territorial days, in 1853: Statutes of Oregon, 1853, p. 152. This enactment was amended in 1876 only in respect to the authority for contracting debts against the vessel. The original law made the vessel liable for debts contracted by the master, owner, agent or consignee. The amendment of 1876 limited that clause to

"debts due to persons by virtue of a contract, expressed or implied, with the owners of a boat or vessel, or with the agents, contractors, or subcontractors of such owner, or any of them, or with any person having them employed to construct, repair, or launch such boat or vessel."

In all other respects the law has remained the same to this day. That amendment in nowise changes the original procedure. The Code of Civil Procedure was adopted by the legislative assembly of this state in October, 1862, and took effect on the first day of June next following. Treating of the foreclosure of liens upon real or personal property, the statute as now embodied in Section 422, Or. L., reads thus:

"A lien upon real or personal property, other than that of a judgment or decree, whether created by

mortgage or otherwise, shall be foreclosed, and the property adjudged to be sold to satisfy the debt secured thereby by a suit. In such suit, in addition to the decree of foreclosure and sale, if it appear that a promissory note or other personal obligation for the payment of the debt has been given by the mortgagor or other lien debtor, or by any other person as principal or otherwise, the court shall also decree a recovery of the amount of such debt against such person or persons, as the case may be, as in the case of an ordinary decree for the recovery of money."

5–7. It has been held uniformly by this court that the remedy in equity devised by this section is exclusive and must be followed: *Thompson* v. *Marshall,* 21 Or. 171 (27 Pac. 957); *McNeff* v. *Southern Pac. Co.,* 61 Or. 22 (120 Pac. 6); *Caro* v. *Wollenberg,* 68 Or. 420 (136 Pac. 866). The later enactment embodied in Section 422, Or. L., supersedes the former where they are in conflict.

When this cause came on for trial, the claimant, appearing for the ship, objected to the same being tried as an action at law and demanded that it be tried as a suit in equity, but this was denied, and the cause proceeded as an action at law, resulting in a personal judgment against the claimant. Under Section 422, *supra,* it is only where a promissory note or other personal obligation for the payment of a debt has been given, that the court in a foreclosure suit can render a personal decree. Where this feature is absent, the only thing that can be done is to foreclose the lien, which includes a sale of the property. The court was in error in proceeding as in an action at law and in rendering a personal judgment. The jury was not called upon to enlighten the conscience of the chancellor. It was impaneled and to it was committed exclusively the decision of the questions

of fact involved. We have not had the benefit of
the personal estimate of the trial judge concerning
the credibility of witnesses, or as to the true state
of facts in the case. The cause was tried in the Cir-
cuit Court as one where the judge was bound by
the verdict of the jury at all hazards, whether in
accord with his judgment of a question of fact, or not.
The case must be reversed on this ground at least.

8, 9. Another matter which claims our attention
is here noted: According to the bill of exceptions, at
the time the judge charged the jury at the conclusion
of the trial, the fourth paragraph of the complaint
read as follows:

"That by reason of the injuries received by plain-
tiff on account of the negligence of the said steamship
as aforesaid, the plaintiff has been damaged in the
sum of ~~($2800.00)~~ 7500.00 twenty-eight hundred dollars, and
will necessarily incur an expense of ninety-nine
($99.00) dollars in endeavoring to cure himself from
said injury."

In other words, as the complaint was typewritten
originally in the part involved, the plaintiff was
"damaged in the sum of ($2800.00) twenty-eight hun-
dred dollars"; and the change consisted, whenever
or however made, in drawing a pen through the
figures "$2800" and writing over them "7500.00."
According to the bill of exceptions, the claimant con-
tended that because there was a discrepancy between
the writing and the figures in the fourth paragraph,
the complaint was to be treated as alleging damages
in the sum of $2,899 only. But after the testimony
had been taken and the cause argued to the jury,
and the court had instructed the jury, just before the
jury retired, the plaintiff asked permission to amend

the complaint to conform the written portion of the paragraph to the figures, and the amendment was allowed by the court over the objection of the claimant. The jury retired and returned with a verdict in the sum of $3,600 in favor of the plaintiff.

Section 102, Or. L., establishes this rule:

"The court may, at any time before trial, in furtherance of justice, and upon such terms as may be proper, allow any pleading or proceeding to be amended by adding the name of a party, or other allegation material to the cause; and in like manner and for like reasons it may, at any time before the cause is submitted, allow such pleading or proceeding to be amended, by striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or when the amendment does not substantially change the cause of action or defense, by conforming the pleading or proceeding to the facts proved."

This function is to be exercised at any time before the cause is submitted. Here, the parties had done all that they could do. The case was submitted, to all intents and purposes. The time for the application of this section had passed. It was too late to enlarge the demand of the complaint. Bearing in mind that the vessel was a foreign craft owned in and sailing from San Francisco, that the claimant was of citizenship diverse from that of the plaintiff, and that under the federal statute the courts of the United States have original jurisdiction where the matter in controversy exceeds the value of three thousand dollars and arises between citizens of different states, the allowance of the amendment would give sanction, in effect, to a practice whereby a defendant could be haled into court to answer a claim not of sufficient amount to give the federal court jurisdiction, and

would be cut off from his right to remove the cause to that court until he had answered and submitted himself to the jurisdiction of the state court, when his right of removal would be lost. The amendment would then cast him in damages to a much greater amount than the limit of state jurisdiction. The amendment ought not to have been allowed. Whenever or however the alteration was made, the legal effect of the complaint is a claim for damages in the sum of $2,899 and should have been so construed by the court. In other words, the language controls the figures: 13 C. J. 537; *United Surety Co.* v. *Summers,* 110 Md. 95 (72 Atl. 775); *Romine* v. *Haag* (Mo.), 178 S. W. 147; *Central Nat. Bank* v. *Pipkin,* 66 Mo. App. 592; *Payne* v. *Clark,* 19 Mo. 152 (59 Am. Dec. 333). It is not a case within Section 719, Or. L., reading thus:

"When an instrument consists partly of written words and partly of a printed form, and the two are inconsistent, the former controls the latter."

The present is a case of written language controlling mere figures. The complaint, therefore, was one for $2,800 general damages and $99 special damages. The application to amend came too late and should not have been allowed in any event under the circumstances relating to federal jurisdiction and the right to remove the cause to the United States courts.

10, 11. It is urged against the validity of the judgment that:

"In the absence of evidence that the claimant knew or ought to have known, that the sling which broke was defective, plaintiff has failed to make out a case of negligence."

The bill of exceptions discloses that the sling which broke was furnished from aboard the vessel. This

circumstance is one which the jury has a right to consider on the question of claimant's knowledge of its defect. It is also contended that this was not a tort committed by the vessel, and that, in the language of *The Osceola,* 189 U. S. 158 (47 L. Ed. 760, 23 Sup. Ct. Rep. 483), the ship must be "the offending thing." In that case it was held that an accident on board a ship was not inflicted by the vessel. And in *The Onoko,* 107 Fed. 984 (47 C. C. A. 111) cited by the claimant on this point, it was held that the statute of Louisiana, practically like that of this state, gave a cause of action *in personam* and not *in rem.* In *Tropical Co.* v. *Towle,* 222 Fed. 867 (138 C. C. A. 293), it was held that a seaworthy ship was not liable in damages for injury to a sailor aboard. The general admiralty rule relating to the employment of sailors was applied in that proceeding, to the effect that where the ship is seaworthy and the seaman is injured aboard the vessel, all he can claim is wages and proper treatment while he is being cured of his injury. His right to general damages beyond that depends upon the ship's not being seaworthy, or, in other words, not being a suitable place in which to work. In *The Theta,* 7 Asp. 480, a captain in going to his own ship had to cross another lying between his vessel and the dock. He fell through a hatchway on the other ship, and it was held not to be an injury by that ship aboard of which he was hurt. In the instant contention we have a ship performing a usual function of a vessel, that of discharging its cargo, in the process of which by defect of its tackle the plaintiff was injured. This is clearly a tort committed by the ship itself. The plaintiff was entitled to a foreclosure of the lien, limited to a sale of the vessel and not including a personal judgment. The

claimant's rights were infringed by the rendition of a judgment larger than the demand of the complaint when properly construed as a matter of law. The claimant was entitled to the judgment of the trial court sitting as a chancellor and passing directly upon the effect and value of the evidence.

For these reasons the judgment is reversed and the cause is remanded for further proceedings not inconsistent herewith.

REVERSED AND REMANDED. REHEARING DENIED.

OBJECTIONS TO COST BILL DENIED.

JOHNS and BROWN, JJ., concur.

BEAN, J., Dissenting in Part.—I heartily concur in the able opinion of Mr. Chief Justice BURNETT on what might be termed the main question in the case, to the effect that the statute upon which this litigation is based is not unconstitutional, and does not infringe upon the federal law. I am unable to give my assent to the proposition that the action is cognizable only as a suit in equity for the foreclosure of a lien. I am constrained to mention this for the reason that for more than thirty years it has been the unquestioned practice in causes arising under Section 10281 et seq., Or. L., in so far as I am able to ascertain, to try the cause as an action at law: *The Victorian*, 24 Or. 121 (32 Pac. 1040, 41 Am. St. Rep. 838); *The Victorian No. Two*, 26 Or. 194 (41 Pac. 1103, 46 Am. St. Rep. 616). When those causes were tried the distinction between an action at law and a suit in equity was at least as broad as it is to-day. Eminent counsel appeared for the parties in those cases. We note on the record the names of Messrs. Bronaugh, McArthur, Fenton and Bronaugh;

Messrs. Cox, Cotton, Teal and Minor; and Messrs. Williams, Wood and Linthicum. See also *Benbow* v. *The James Johns,* 56 Or. 554 (108 Pac. 634).

The Oregon statute was construed in "The Bee," 216 Fed. 709, by Judge BEAN, who was for a long time a member of this court. It is there stated:

"The remedy provided by the state law for enforcing the lien given by the statute is an action against the boat or vessel by name, rather than *in personam* against the owner (Section 7506, Lord's Or. Laws), but after the seizure of the vessel and the return of the warrant the proceedings are to be had against the vessel in the same manner as if the action had been commenced against the person on whose account the damages accrued (Section 7509). And if an issue of fact be joined the same proceedings shall be had as in other actions. Section 7511. This being so it would seem to follow that the trial should be governed and the liability of the parties determined by the same rule as if the action were *in personam* against the owner; * * "

This language indicates that it is also understood by the federal courts in Oregon that a proceeding under the statute in question is an action at law.

As indicated by Section 10281, Or. L., which declares:

"Every boat or vessel used in navigating the water of this state or constructed in this state shall be liable and subject to a lien: * * for damages or injuries done to persons or property, by such boat or vessel, * * ."

it would seem to the writer that, strictly speaking, while the boat is subject to a lien there is no definite or fixed amount of the lien until judgment therefor is rendered, so that when the lien is finally perfected it is merged in a judgment, and is not required to be

foreclosed within the meaning of Section 422, Or. L., It does not appear that in the enactment of the latter section it was the intention of the lawmakers to change the mode of procedure under the boat lien law. The law provides for a special proceeding, but it is denominated by the statute as an "action." The case at bar does not come within the ordinary list of causes of equitable cognizance. It was appropriately tried as a law action. It would be a very radical change for this court to try a damage case for personal injuries *de novo*.

It is presumed that the legislature does not intend to make unnecessary changes in the pre-existing body of law. The construction of a statute will therefore be such as to avoid any change in the prior laws beyond what is necessary to effect the specific purpose of the act in question: Black on Interp. of Laws, p. 110, § 52; *Manuel* v. *Manuel*, 13 Ohio St. 458; *Bear's Admr.* v. *Bear*, 33 Pa. St. 525; *Thompson* v. *Mylne*, 4 La. Ann. 206; *Childers* v. *Johnson*, 6 La. Ann. 634. We quote from Maxwell, Interp. (3 ed.), 96:

"One of these presumptions is that the legislature does not intend to make any change in the law beyond what it explicitly declares, either in express terms or by unmistakable implication, or, in other words, beyond the immediate scope and object of the statute. In all general matters beyond, the law remains undisturbed. It is in the last degree improbable that the legislature would overthrow fundamental principles, infringe rights, or depart from the general system of law, without expressing its intention with irresistible clearness; and to give any such effect to general words, simply because, in their widest and perhaps natural sense, they have that meaning, would be to give them a meaning in which they are not really used."

If it be granted that the cause is a suit in equity, I see no reason why it should not be tried *de novo* in this court.

As to the amendment of the complaint, as I understand the record, the complaint was first typewritten, alleging damages in the sum of "($2800) twenty-eight hundred dollars, and will necessarily incur an expense of ninety-nine ($99) dollars in endeavoring to cure himself from said injury." Afterwards a pen was drawn through the figures "$2800" and "7500" written over the same. At the time of the submission of the cause to the jury, after the instructions had been given by the court, in order to make the allegation of damages clear, plaintiff was permitted to correct the complaint to conform the written portion of the paragraph to the figures. The so-called amendment was a mere correction of an apparent clerical error, and in no way affected the issues. This was over the objection of claimant.

Section 102, Or. L., provides that the court may, at any time in the furtherance of justice and upon such terms as may be proper before the cause is submitted, allow any pleading or proceeding to be amended "by striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or when the amendment does not substantially change the cause of action or defense, by conforming the pleading or proceeding to the facts proved."

An application to amend a pleading at the trial is addressed to the sound discretion of the trial court, and the ruling of the court in such a matter should not be disturbed, except in the case of an abuse of discretion: *Brown* v. *Feldwert,* 46 Or. 363 (80 Pac.

414); *Wallace* v. *Baisley,* 22 Or. 572 (30 Pac. 432);
*Garrison* v. *Goodale,* 23 Or. 307 (31 Pac. 709); *Filkins*
v. *Portland Lbr. Co.,* 71 Or. 249 (142 Pac. 578); *Hey-
wood* v. *Doernbecker,* 48 Or. 359 (86 Pac. 357, 87 Pac.
530); *Ridings* v. *Marion Co.,* 50 Or. 30 (91 Pac. 22);
*Beard* v. *Royal Neighbors,* 60 Or. 41 (118 Pac. 171).

The trial court is in a better position than is the
appellate court, to decide in regard to whether or
not the circumstances warrant the allowance of an
amendment of a pleading in order that the ends of
justice may be met. There had been no application
for the removal of the cause to the federal court. I
do not think there was any abuse of discretion in
allowing the amendment.

The service of process upon the Bee Steamship
Company, a corporation, the owner of the vessel,
being only a constructive service, the owner appeared
for the boat and answered the complaint, and asked
for judgment in its favor for costs and disbursements.
It made a general appearance in the case, and is
bound by the judgment. Where an undertaking is
given for the discharge of a boat, under the provisions
of Section 10289, in a proceeding of this kind, as was
done in the present case, the manner of rendering and
executing judgment is directed by Section 10292, Or.
L., which reads thus:

"If an undertaking with surety shall have been
given according to Section 10289, and judgment shall
have been rendered in favor of the plaintiff, a judg-
ment shall also be rendered upon the undertaking,
and execution shall be issued for the amount of judg-
ment and costs in favor of the plaintiff, against the
principal and security in such undertaking."

Judgment was rendered against claimant and its
surety, and the requirements of the latter section

were followed in this case.   There was no error in so doing.

The judgment of the Circuit Court should be affirmed.